# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JANA K. STRAIN**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW E. DUMAS**
Hostetter & O'Hara
Brownsburg, Indiana

**FILED**

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLARENDA LOVE, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1311-DR-504 |
| | ) | |
| BRUCE LOVE, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Robert J. Lowe, Senior Judge
Cause No. 32D05-1006-DR-88

**April 30, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Clarenda Love appeals from the trial court's division of marital property in the dissolution of her marriage to Bruce Love. Clarenda raises two issues which we consolidate and restate as whether the court erred in its division of the marital property. We affirm.

FACTS AND PROCEDURAL HISTORY

The relevant facts, as set forth in this court's previous June 26, 2013 memorandum decision (the "June 2013 Decision") related to the parties' dissolution proceedings, are as follows:

Clarenda and Bruce were married on September 23, 1979. There are two children born of the marriage, both of whom were emancipated before the dissolution of Clarenda and Bruce's marriage.

After the couple's first child was born, Clarenda earned money for the family by babysitting and then later by operating a housecleaning business with a friend. When the children were young, Clarenda exercised primary responsibility for taking care of the home and the children while working part-time. During this period, Bruce worked fulltime outside the home. The family's bills were paid from a joint account.

At some point in the 1990's, Clarenda started taking prerequisites for pharmacy school. In approximately 2000, Clarenda entered Purdue University to take core pharmacy classes. During this time, Clarenda also worked for Kroger and cleaned houses. Despite working part time and engaging in co-op programs during school, Clarenda incurred student loan debt valued at $54,646.84 at the time of separation. She graduated from Purdue in 2005, passed the pharmacy boards in August 2007, and then was hired as a full-time pharmacist at Kroger.

Bruce also went to college during the marriage, but he did not graduate. His college tuition was reimbursed by his employer.

Bruce petitioned for dissolution of the marriage on June 22, 2010, and, although the parties continued to reside in the marital residence until Bruce moved out in December of 2011, the separation date is June 22, 2010 (the date the petition for dissolution was filed).

2

At the time of the final dissolution hearing on June 19, 2012, Clarenda had been employed full-time for five years as a pharmacist for Kroger, and Bruce had been employed as an engineer at SMC Corporation of America ("SMC") for a number of years. Clarenda had accumulated a retirement account through Kroger with a balance of $21,617.71 on the date of separation, and Bruce had accumulated a retirement account through SMC with a balance of $65,935.37. Clarenda's annual salary was $106,000 on the date of separation, and Bruce's annual salary was $52,000.

During the marriage, the parties acquired two residential properties: the marital residence in Avon, Indiana (the "marital residence") and a rental property in Lafayette, Indiana (the "rental property["]),[1] which they rented to Purdue students. For most of the period that the parties owned the rental property, Bruce was responsible for maintenance and Clarenda was responsible for administrative issues (finding renters, executing leases, collecting rent, etc.). At the time of the separation, Clarenda stopped managing the rental property, and Bruce took over those duties. When Bruce took over administrative duties, the cash flow from the rental property dwindled.

During the marriage, the parties jointly owned a money market account ("Account 2744") that, until April 14, 2009, held approximately $27,000. On April 14, 2009, Bruce, in anticipation of filing for dissolution of the marriage, withdrew half the money market balance ($13,500) and moved it to a personal account ("Account 5330"). On or about the date of separation, Account 2744 held $13,821.44.

Love v. Love, No. 32A05-1207-DR-373, slip op. 2-4 (Ind. Ct. App. Jun. 26, 2013). On June 27, 2013, the trial court entered an Order of Property and Debt Distribution (the "Original Order"). The June 2013 Decision summarized the trial court's property distribution set forth in the Original Order as follows:

The trial court awarded the marital residence (with a gross value of $94,555.00) to Clarenda and the rental property (with a gross value of $130,000) to Bruce. The trial court also awarded other assets with a gross value of $69,498.37 to Clarenda and a gross value of $107,890.38 to Bruce. The court further held Clarenda responsible for $71,988.36 in debt

---

[1] Clarenda testified that the rental property was purchased in 1996 or 1997.

(including a mortgage of $6,321.04 and student loans of $56,686.54[2]) and Bruce responsible for $47,406.22 (the amount of the mortgage on the rental home). Thus, of the net marital estate worth $282,549.17, the trial court awarded Clarenda 32.6 percent ($92,065.01) and Bruce 67.4 percent ($190,484.16). In support of its "Order of Property and Debt Distribution," the trial court stated the following in pertinent part:

> Both parties are employed. [Bruce] earns $52,000.00 annually and [Clarenda] approximately $106,000. During the course of the marriage, [Clarenda], while being a homemaker and working part-time, completed a pharmacy degree, acquired a license, and is now employed as a pharmacist. However, certain student loans acquired as a result thereof remain unpaid, those being Xpress Loan Servicing [as shown on Exhibit C].

> * * * * *

> The Court specifically finds that the deviation from the presumptive equal distribution . . . [is] just and reasonable given the significant difference in present income and future earnings potential of the parties, and the fact that this difference results directly from educational degrees and a professional license acquired wholly within the course of the marriage.

Id. at 4-5.

Clarenda appealed from the Original Order, arguing that the trial court abused its discretion in deviating from the statutory presumption of an equal division of marital property and that the court's findings were insufficient to support its order. Id. at 5. This court issued the June 2013 Decision and noted that the presumption of an equal division of marital property may be rebutted if a party presents relevant evidence regarding the five factors set forth in Ind. Code § 31-15-7-5. Id. at 6. In the June 2013 Decision, this court observed that the trial court's findings failed to indicate that the trial court

---

[2] The total of the amounts associated with the "Xpress Loan Servicing" debt shown on Exhibit C to the Original Order is $54,646.84.

4

considered all of the relevant factors,[3] that while Clarenda has a higher income she also has been held responsible for payment of significant debt, and that, while Clarenda benefitted from Bruce's support during the marriage, Bruce reaped the benefits of Clarenda's home management throughout the marriage and increased income during the years after she passed the boards and before Bruce filed the petition for dissolution. Id. at 6-7. We further noted that the trial court may have given undue consideration to the parties' income differential, specifically noting that although Clarenda does now have a higher income than Bruce it is not such a significantly higher income that it would necessarily justify a deviation from an equal division, that the entire family benefitted from Clarenda's higher income while the parties were still married, and that the trial court set aside a significant amount of debt, largely attributable to Clarenda's education which enabled her to make the higher income, to Clarenda. Id. at 7. We stated: "These factors, if considered by the trial court, may have caused the court to order less of a deviation from [a] presumed equal division of property. On the other hand, they may not have affected the court's ultimate determination. The bottom line is that we cannot discern from the trial court's order whether it considered relevant factors other than the disparity in the parties' income." Id. The June 2013 Decision remanded with instructions that the trial court determine the distribution of the marital estate in accordance with the presumption of an equal division of marital property. Id. at 8.

---

[3] The June 2013 Decision noted that the factor related to acquisition of property through gift or inheritance prior to the marriage had no application to the facts and circumstances of this case. Love, Slip op. at 6 n.1.

5

Following remand, the trial court on November 1, 2013, entered an order titled

Amended Order of Property and Debt Distribution on Remand (the "Amended Order").

The Amended Order provided in part:

> Preliminarily, this Court does apologize to all concerned that it did not set forth in its [Original] Order a sufficient explanation of its decision, thus bringing about this remand.

> \* \* \* \* \*

> Regarding the contribution of each spouse in factor (1) of the statute, the evidence shows that the parties were married in 1979 when [Clarenda] became pregnant at age 17. [Bruce], who is approximately 3 years older and never acquired a college degree, worked throughout the marriage at a modest but respectable wage. A second child came along and [Clarenda] in the early years had primary responsibility for household matters, but also worked part time cleaning houses as she could. Initially, both parties pursued some limited additional education at no significant cost, [Bruce] being reimbursed by his employment, and [Clarenda] being subsidized by her grandmother.

> Until about the year 2000 all indications are that the parties contributed equally to the family enterprise including the acquisition of property. In that year the oldest child was or was about to be emancipated, the youngest was approximately at high school entry age, and [Clarenda] embarked upon the pursuit of a pharmacy degree and a license to practice that profession. For approximately the next seven years her income was nominal while she travelled from Avon to Lafayette to attend classes at Purdue or worked as a "co-op", presumably an intern, at Kroger. [Bruce] testified that he supported her and that he paid the costs of travel, books, etc. However, it appears that a "pay as you go" strategy was not fully possible as the parties incurred significant student loan debt with $54,646.84 of that still owing at the time of separation.

> It is obvious that [Clarenda] devoted considerable time, effort and resources toward obtaining her degree and license, and she is to be complimented and admired for doing so. However, [Bruce] also sacrificed and the process involved ongoing monetary expense, and, the Court infers, loss of time to devote to the family enterprise and loss of potential income from more regular employment from [Clarenda]. Even if this latter be deemed too speculative, there is the hard fact of $54,646.84 in remaining debt directly attributable to the acquisition.

6

Since a degree and license cannot be included as "property" in the marital pot, this course of events resulted, albeit with no bad faith or evil intent exhibited by either party, in a significant reduction in the resulting marital pot at separation. Marital property, or what would could have [sic] and should have become marital property (to include lack of debt), was converted to non-marital property, *i.e.,* the degree and license, which inures only to [Clarenda's] benefit after separation. While technically not dissipation, the effect is the same on [Bruce's] bottom line.

The Court finds the foregoing to be a persuasive argument under factor (1) of the statute against the presumption of equal distribution. If not relevant as such under factor (1), it is at least an additional reason why an unequal distribution would be just and reasonable, to be factored in with the others.

Moving on to the other factors, (2) was found by the Court of Appeals to clearly have no relevance to this case. Regarding factor (3) there are no minor children in need of a residence, and neither party is in danger of being left destitute so long as their present income levels are maintained. However, as a significant debt responsibility must be assigned, [Clarenda's] higher income gives her greater flexibility in this regard. This is even more so due to the fact that (at least at the date of the original Order herein) it is not an advantageous time to sell real estate such as the Lafayette property awarded to [Clarenda],[4] and the Court finds it undesirable to place the parties in a position in which this is likely to be necessary.

Respecting factor (4) the Court reiterates its finding of no bad conduct or dissipation on the part of either party, but also reiterates its conclusion that, if the presumption of equal division obtains, the unforeseen outcome of the laudable pursuit of her degree and license is a windfall to [Clarenda] and constitutes unjust enrichment. At least as to the remaining student loan debt, equal division means that [Bruce] will be subsidizing, in the amount of 1/2 of the balance thereof at separation, or $27,323.42, [Clarenda's] acquisition of her pharmacy degree and license leading to her enhanced income, which is all hers to keep.

Which brings us to factor (5). The parties testified, and the Court found, that their annual wages were $52,000 for [Bruce] and $106,000 for [Clarenda]. The parties further testified that, when all sources of income

---

4 In its Original Order, the trial court awarded the rental property in West Lafayette to Bruce, and the court did not disturb this aspect of the property division in its Amended Order. The reference here to Clarenda, the Respondent below, appears to be a mistaken reference. Also, as noted by Clarenda, the rental property was located in West Lafayette.

7

were considered, their actual approximate annual incomes were $60,000 and $120,000 respectively. Whatever these exact figures, it is undisputed that [Clarenda's] income is at least twice that of [Bruce's], and that the quantum leap that her income took beginning in mid 2007 was only made possible by acquisition of the degree and license. [Bruce] did reap the advantage of [Clarenda's] increased income from its inception until separation, but this was for a period of only approximately three years, and not long enough to pay down the student loans to less than $54,646.42. [Clarenda], age 49 at final hearing, has many more earnings years ahead of her. [Bruce], at 52, is unlikely to see any increase in income beyond cost of living adjustments. Further, the Court finds this difference of $54,000 to $60,000 in annual income to be substantial. The first $60,000 should leave one comfortably average; the second $60,000 can buy security and the finer and special things in life that most, especially as they age, very much seek and enjoy.

In view of the foregoing, the Court found that an equal division of property would not be just and reasonable, and that the presumption thereof in I.C. 31-15-7-5 is rebutted. That being said, the issue of exactly what is just and reasonable remains, of course. The Court Order of June 27, 2012 sets forth a distribution of 67.4% [Bruce] and 32.6% to [Clarenda]. On the face of it, and in view of past Appellate decisions in Indiana, such a disparate division is considered suspect. The decision remanding this very case tactfully makes this point. Nevertheless, and mindful of the disfavor with which it would be viewed, the Court found its decision to be the just and reasonable one. Two additional reasons are offered therefore: First, to make the division previously ordered equal would require the transfer of $49,209.58 from [Bruce] to [Clarenda]. But as it stands, with [Clarenda's] excess income over [Bruce's], even allowing 30% less for taxes, she can make this up in approximately 1.7 years, and thereafter have the entire additional $60,000 per year all to herself.

Second, and more persuasive to this Court is the idea that, in view of the special facts and circumstances of this case, the remaining balance of $54,646.84 of student debt should not be treated as a debt of the marriage at all (though still [Clarenda's] sole obligation to pay), since the valuable asset it was used to purchase, the degree and license, is not considered property of the marriage, and since [Bruce] cannot realize any benefit from it.

Nevertheless, in the process of this analysis the Court has come upon precedent, not previously noted by any party involved, precisely on point and forcing the Court to modify its previous Order. Roberts v. Roberts, [670 N.E.2d 72 (Ind. Ct. App. 1996), trans. denied], dealt with similar facts (a law degree), and similar reasoning on the part of the trial

8

Court in reaching a very unequal division of property. The cause was reversed and remanded, the final result being unknown.

Roberts clearly establishes that a degree cannot be counted as marital property, that student loan debt associated with it remains marital debt, and that these facts alone will not support an award of maintenance or alimony. The Court of Appeals even goes so far as to say that (in spite of the statutory mandate in I.C. 31-15-7-4(b) to divide the property "in a just and reasonable manner"), "inequities" must be allowed to occur in situations such as these, and that this problem can only be remedied by legislation.

This Court must defer to the Court of Appeals, and it is clear that the original Order as it stands will not survive further appellate review. However, Roberts does not say that there is nothing in facts such as these allowing the presumption of equal division to be rebutted; on the contrary, it is stated specifically that consideration of the increased earning capacity resulting from the degree is permitted under the statute.

Considering, then, all relevant statutory and non-statutory factors, including the great difference in earning capacity resulting directly from the acquisition of the degree and license during the course of the marriage and the manifest inequity of forcing [Bruce] to go on subsidizing [Clarenda's] twice-his-size paycheck, the Court reiterates its finding that the presumption of equal division is rebutted, and that, at the very minimum, a just and reasonable division demands that an otherwise equal division be adjusted by shifting 1/2 the student loan debt, or $27,323.42, from [Bruce] to [Clarenda's]. This the Court orders done by adopting the property division as set out in the original Order, and modifying same by ordering that [Bruce] shall make an equalization payment to [Clarenda] in the amount of $21,886.16 within thirty (30) days of this Amended Order or under such reasonable terms that the parties submit by agreement subject to the Court's approval. This results in a net distribution of $168,598.00, or 59.7%, to [Bruce], and $113,951.17, or 40.3%, to [Clarenda].

The Court's Order of Property and Debt Distribution of June 27, 2012 is incorporated herein by reference and the matters therein are reiterated and reordered, modified only by the equalization payment as above ordered together with the analysis and explanations contained herein.

Appellant's Appendix at 9-15. Clarenda now appeals from the Amended Order.

## DISCUSSION

The issue is whether the trial court erred or abused its discretion in its division of the marital property. Clarenda asserts that the evidence does not rebut the statutory presumption that an equal division would be just and reasonable and therefore that the trial court abused its discretion in dividing the marital estate unequally. She argues that, in focusing on the student loans and the idea that incurring student loan debt converted marital property to a non-marital asset, the trial court disregarded the parties' contributions to the acquisition of property. She does not dispute that she devoted time and resources toward obtaining her degree, but argues that Bruce offered no evidence that her education resulted in either lost time to devote to the family enterprise or lost potential income, that it is wholly speculative to consider her lost potential income, and that her education and skills would suggest that her potential income was no higher than minimum wage. Clarenda maintains that the court did not consider her work in administering the rental property during fifteen years of marriage, that the court found there was no dissipation, and, although Bruce assisted with providing her with a car and money for gas and books, that the student loans were not unusual and did not constitute a waste or misuse of the marital finances. She contends that the trial court again gave undue consideration to the parties' incomes and that Bruce's income is a product of his lengthy employment history which he achieved in part because he had her support. Clarenda also claims that, although tying debts to assets may be appropriate in some property divisions, a degree is not an asset and it is error to tie student loan debt to the degree.

Bruce contends that the Amended Order discusses all of the relevant statutory factors and provides two additional reasons for the unequal division of the marital estate and that the trial court did not abuse its discretion in awarding him 59.7 percent of the marital estate. He argues that, if not for his actions in working and allowing Clarenda to obtain her pharmacy degree and license, she may not have had that degree and license, that he received very little benefit (three years of a thirty-year marriage) of Clarenda's pharmacy degree and license while he carried the financial load during the majority of the marriage, that Clarenda's earnings before obtaining the pharmacy degree and license were nominal, and that he paid all expenses during her quest for the degree and license. Bruce also maintains that the Amended Order correctly identifies Clarenda's student loan obligations as a marital debt.

The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. Hartley v. Hartley, 862 N.E.2d 274, 285 (Ind. Ct. App. 2007). An abuse of discretion occurs if the trial court's decision "is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute." Hatten v. Hatten, 825 N.E.2d 791, 794 (Ind. Ct. App. 2005), trans. denied. When we review a claim that the trial court improperly divided marital property, we must consider only the evidence most favorable to the trial court's disposition of the property. Id. Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. Id.

11

An equal division of marital property is presumed to be just and reasonable, but this presumption may be rebutted if a party presents relevant evidence regarding the following factors: (1) each spouse's contribution to the acquisition of property; (2) acquisition of property through gift or inheritance prior to the marriage; (3) the economic circumstances of each spouse at the time of disposition; (4) each spouse's dissipation or disposition of property during the marriage; and (5) each spouse's earning ability. Ind. Code § 31-15-7-5. When ordering an unequal division, the trial court must consider all of the factors set forth in the statute. Eye v. Eye, 849 N.E.2d 698, 701 (Ind. Ct. App. 2006). While a trial court abuses its discretion in considering a factor in isolation from the other four factors, the court is not required to explicitly address each factor. Id. at 702. However, a court on review must be able to infer from the trial court's findings that all the statutory factors were considered. Id. at 703.

The trial court's division of marital property is "highly fact sensitive and is subject to an abuse of discretion standard." Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). Also, a trial court's discretion in dividing marital property is to be reviewed by considering the division as a whole, not item by item. Id. We "will not weigh evidence, but will consider the evidence in a light most favorable to the judgment." Id. A trial court may deviate from an equal division so long as it sets forth a rational basis for its decision. Hacker v. Hacker, 659 N.E.2d 1104, 1109 (Ind. Ct. App. 1995). "A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute." Wanner v. Hutchcroft, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008). "Thus, we will reverse a

12

property distribution only if there is no rational basis for the award." Helm v. Helm, 873 N.E.2d 83, 89 (Ind. Ct. App. 2007) (citation omitted).

It is well-established that all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a); Beard v. Beard, 758 N.E.2d 1019, 1025 (Ind. Ct. App. 2001), trans. denied. This "one-pot" theory ensures that all assets are subject to the trial court's power to divide and award. Thompson v. Thompson, 811 N.E.2d 888, 914 (Ind. Ct. App. 2004), reh'g denied, trans. denied.

Here, in its Amended Order, the trial court addressed the factors set forth in Ind. Code § 31-15-7-5 and found that the evidence relating to the factors rebutted the presumption of an equal division of marital property. Regarding the acquisition of the marital property, the record reveals, that for the first years of the parties' marriage, Clarenda cared for the parties' children and earned money by babysitting and housecleaning, and Bruce worked full time. A little over twenty years into the marriage, Clarenda attended school and obtained her pharmacy degree and license, during which time she incurred $54,646.84 of student loan debt, and she ultimately became employed as a full-time pharmacist in 2007. According to the asset and debt schedules attached to the Original Order, the parties had paid off a significant portion of the mortgage associated with the marital residence prior to 2010, and at that time Clarenda had been employed as a full-time pharmacist for approximately three years of the parties' thirty-

13

year marriage.[5]  Clarenda testified that the parties acquired a rental property in 1996 or 1997, and according to the asset and debt schedules attached to the Original Order, the value of the parties' debt associated with the property was a little over one-third of the value of the property in 2010, and at that time Clarenda had been employed as a full-time pharmacist for approximately three years of the thirteen or fourteen years the parties had owned the rental property.[6]  Until the parties' separation, Bruce was responsible for maintenance of the rental property and Clarenda was responsible for administrative issues related to the property.  As noted by the trial court, until the year 2000, all indications are that the parties contributed equally to the acquisition of property, and after that time Clarenda committed time and resources, which included incurring student loan debt, toward obtaining her degree and license.  Neither party claims property was received through gift or inheritance prior to the marriage.

With respect to the parties' economic circumstances, as of the date of the parties' separation, Clarenda earned $106,000 annually, Bruce earned $52,000 annually, and the court awarded the marital home and associated debt to Clarenda and the rental property and associated debt to Bruce.  In its Amended Order, the court found that the parties testified that, when all sources of income were considered, the actual approximate annual incomes of Clarenda and Bruce were $120,000 and $60,000, respectively.  The value of assets schedule attached to the Original Order shows the value of Bruce's retirement account with his employer after a number of years of employment was $65,935.37 and

---

[5] The court valued the marital residence at $94,555.00 and the mortgage at $6,321.04.

[6] The court valued the rental property at $130,000.00 and the debt associated with the property at $47,406.22.

14

the value of Clarenda's retirement account with her employer after three years of full-time employment was $21,617.71. The schedule also shows that the parties' bank and money market accounts were divided evenly between the parties, that Bruce was awarded three vehicles, namely, a 1977 Ford Bronco, a 1995 Acura Integra, and a 1991 Ford F-250, with a total value of $2,935, that Bruce was awarded four motorcycles valued at $4,985, and that Clarenda was awarded two vehicles, namely, a 2000 Volkswagen Jetta and a 2005 Cadillac, with a total value of $20,960.

We note that the trial court did not consider Clarenda's pharmacy degree and license as constituting marital property. However, the court observed that the martial estate includes the student loans associated with paying for Clarenda's education. The court also explained that, consistent with case law, it considered Clarenda's increased earning capacity resulting from her degree. See Roberts v. Roberts, 670 N.E.2d 72, 77-78 (Ind. Ct. App. 1996) (noting that "the dissolution statute does permit the increased earning capacity of a spouse who has earned a degree during a marriage to be considered in regard to the division of marital property"), trans. denied. Although incurring student debt may not have constituted waste or misuse of marital assets, the debt was incurred to enable Clarenda to obtain her education and licensure, which she achieved, and we note that the debt must be included as a liability in the marital estate, that the debt reduces the aggregate value of the marital estate to be distributed between the parties, and that the value of the debt must be assigned to the parties in some fashion. See id. at 76-77 (noting that the wife argued that, if the husband's degree was not to be considered a marital asset then, correspondingly, his student loans should not be considered marital liabilities,

15

disagreeing with her argument, observing that the student loans were contracted during the marriage and were properly considered as part of the marital estate, and holding that "the court quite properly determined that [the husband] should be solely responsible for their repayment" and that the wife "suffered no harm whatever from their inclusion in the marital pot and the order that [husband] be solely responsible for their repayment"). The trial court noted these facts and considered the relevant statutory factors, found that the presumption of equal division was rebutted, and found that a just and reasonable division was to shift one-half of the student loan debt from Bruce to Clarenda, which the court achieved by ordering Bruce to make an equalization payment to Clarenda of $21,886.16.[7] This resulted in a net distribution of 59.7 percent of the marital estate to Bruce and 40.3 percent of the marital estate to Clarenda.

Under the circumstances and upon review of the record and the court's findings and conclusions, we cannot say that Clarenda has overcome the strong presumption that the trial court considered and complied with the applicable statute, and we do not disturb the division of marital property set forth in the trial court's Amended Order.

CONCLUSION

For the foregoing reasons, we affirm the trial court's division of the marital estate.

_____

[7] One-half of the student loan debt of $54,646.84 is $27,323.42. Shifting the value of one-half of the student loan debt from Bruce to Clarenda results in a total distribution to Clarenda of $113,951.17, which can be calculated by subtracting the value of one-half of the student loan debt from one-half of the aggregate marital estate as follows: ($282,549.17 ÷ 2) − $27,323.42 = $113,951.17 (rounding up by one-half cent). Shifting the value of one-half of the student loan debt from Bruce to Clarenda results in a total distribution to Bruce of $168,598.00, which can be calculated by adding the value of one-half of the student loan debt to one-half of the aggregate marital estate as follows: ($282,549.17 ÷ 2) + $27,323.42 = $168,598.00 (rounding down by one-half cent). The Original Order awarded Bruce $190,484.16 of the marital estate, and in order to effect an ultimate distribution to Bruce of $168,598.00 of the marital estate, the court in its Amended Order required Bruce to pay Clarenda an equalization payment in the amount of $21,886.16, the difference between $190,484.16 and $168,598.00.

16

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.