## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 08 2015, 8:53 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Perry D. Shilts
Shilts Law Office
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Cathleen M. Shrader
Emily S. Szaferski
Barrett & McNagny
Fort Wayne, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mohammed Nadeem,<br>*Appellant-Respondent,*<br><br>v.<br><br>Shahidatul Abubakar,<br>*Appellee-Petitioner* | July 8, 2015<br><br>Court of Appeals Case No.<br>02A04-1407-DR-343<br><br>Appeal from Allen Superior Court<br><br>The Honorable Charles F. Pratt, Judge<br><br>Trial Court Cause No.<br>02D07-1212-DR-957 |

**Mathias, Judge.**

[1] The Allen Superior Court issued an order dissolving the marriage between Mohammed Nadeem ("Husband") and Shahidatul Abubakar ("Wife"). Husband appeals and presents four issues, which we restate as:

I.    Whether the trial court abused its discretion in valuating certain marital assets as of the date of the filing of the petition for dissolution instead of the date of the dissolution hearing;

II.   Whether the trial court abused its discretion in refusing to consider funds Husband received from his parents as a loan;

III.  Whether the trial court abused its discretion in awarding to Wife sixty percent of the marital estate and awarding to Husband forty percent of the marital estate;

IV.   Whether the trial court abused its discretion in ordering Husband to pay $14,000 of Wife's attorney's fees.

We affirm.

## Facts and Procedural History

The parties were married in December 1992, when both were in college. Husband completed his bachelor's degree and later a master's degree, but Wife completed only about one year of courses. The marriage produced five children: O.N., born in 1993; Sh.N., born in 1996; S.N., born in 1999; F.N., born in 2002; and M.N., born in 2008. At the time of dissolution, Husband was fifty years old, and Wife was forty-one years old. Wife was a homemaker and the children's primary caregiver. Husband worked for various companies during the marriage.

From 2005 to 2007, Husband worked for Alcan Inc. in India and earned approximately $130,000 per year, not including bonuses and his expenses in India, which included housing, transportation, and tuition for the children. From 2007 to 2011, Husband worked for Terex Corp. in India, where his base salary was approximately $150,000 per year. In 2007, Husband began to work

for Paharpur 3P ("Paharpur"), where he was the managing director/chief executive officer ("CEO"). After 2011, Husband's employment was divided between time in India and time in Indiana. Husband typically spent three weeks per month in India and one week per month in Fort Wayne, where Wife and the children lived. As CEO, his base salary was approximately $150,000 per year. In addition, many of his expenses in India were paid by the company, including a car and driver, housing in India, and regular trips between India and Fort Wayne.

[5] In 2012, Wife became involved in a physical relationship with Husband's nephew, her children's cousin. When Husband discovered this, he became emotionally distraught and was prescribed antidepressant medications. Husband even discharged a firearm at the parties' home while arguing with his nephew about his affair with Wife. Eventually, the parties and their children went to India, but Wife and the children returned to Indiana after one week.

[6] The parties attended marital counseling, which was ultimately unable to repair their marital relationship. On December 27, 2012, at one of the counseling sessions, Wife served Husband with her petition for dissolution. At this time, the trial court entered a provisional order preventing either party from transferring, encumbering, concealing, or disposing of the marital property except for necessary expenses. Also, during the pendency of the dissolution, the parties shared physical custody of the children under what the trial court referred to as a "bird's nest" arrangement, whereby the children remained at the

marital home at all times, and the parents lived in the marital home only when they had physical custody of the children.

[7] After Wife had filed the petition for dissolution, Husband informed Wife that he had earlier resigned as CEO of Paharpur, apparently because of his emotional state. However, Husband did not inform Wife or their marital counselor of his resignation until after Wife had filed for dissolution. Husband instead took a job with Paharpur as an "advisor" to the office of the CEO, even though another CEO was not selected. As an advisor, Husband's salary substantially decreased to $80,000 per year, with no bonuses or other perquisites. Thus, Husband was now personally responsible for the expenses associated with him working in India and travelling back and forth between India and Indiana.

[8] As found by the trial court, Husband "made multiple efforts to make life as difficult as possible for [Wife] during the pendency of the [dissolution] case." Appellant's App. p. 26. For example, Husband allowed the lease to expire on the vehicle Wife used to transport the children and made no effort to help Wife find other means of transportation for the children. Husband also denied Wife access to their daughter's car. When Husband eventually did allow Wife to have access to their daughter's car, he surreptitiously attached a GPS device to the car in an attempt to track Wife's whereabouts, despite an order from the trial court to the contrary. He also accessed Wife's computer without her knowledge or consent.

[9] Husband also attempted to harm Wife's reputation in the local Islamic community by showing, or attempting to show, explicit photos and videos of Wife to various members of that community. He also discussed Wife's affair with his nephew in front of the children and even attempted to show the explicit photos of Wife to their daughter. Husband failed to pay for financial obligations that were in Wife's name despite the provisional order requiring him to do so; yet, Husband kept current on the financial obligations that were in his name.

[10] Wife's capability or willingness to supervise the children declined at this time, especially in the area of school attendance and overseeing the activities of the oldest daughter and her friends. Husband would spend approximately eight days per month with the children, and Wife would spend the remaining days with the children.

[11] The trial court held a dissolution hearing on March 21 – 25, 2014. On July 7, 2014, the trial court entered a dissolution decree containing findings of fact and conclusions of law deciding issues of child custody and support and the division of marital assets. Husband now appeals.

## I. Date of Valuation of Marital Assets

[12] Husband first challenges the trial court's decision to value certain marital assets as of the date of the filing of the petition for dissolution instead of the date of the dissolution hearing. At the time of the filing of the petition, the marital assets included the following accounts:

| Asset | Value |
|---|---|
| Chase Account No. 0036 | $11,417.00 |
| Citibank Account No. 3538 | $14,995.00 |
| TD Ameritrade Account No. 2548 | $102,807.00 |
| JP Morgan Chase Account No. 8214 | $68,792.00 |
| TOTAL | $198,011.00 |

*See* Appellant's App. p. 34.

[13] By the time of the date of the dissolution hearing, however, these accounts had been depleted to a total of only $395.00. By awarding him these now-depleted assets, Husband claims that the trial court awarded him effectively none of the marital estate.

[14] The trial court has broad discretion in determining the value of property in a dissolution action, and its valuation will only be disturbed for an abuse of that discretion. *Trabucco v. Trabucco*, 944 N.E.2d 544, 557-58 (Ind. Ct. App. 2011), *trans. denied*. With regard to the date for the valuation of a marital asset, our courts have long held that trial courts have discretion to value the marital assets at any date between the date of filing and the date of the final hearing, and we will reverse the trial court's decision as to a valuation date only where it is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* at 558. In our review of the trial court's valuation decision, we will not weigh evidence but will consider the evidence in a light most favorable to the judgment. *Id.* Although the date selected for the valuation of an asset has the effect of allocating the risk of a change in the asset's value to one party or the other, this allocation of risk is entrusted to the discretion of the trial court.

*Id.* The choice to assign an early valuation date to an asset that later decreases in value is not necessarily an abuse of discretion. *Id.*

[15] We discussed the broad scope of the trial court's discretion in such matters in *Trabucco*. There, we noted that our court had previously held that "'where . . . the value of a marital asset changes radically between the date of final separation and the final hearing, it is an abuse of the trial court's discretion to select a valuation date that does not account for the events contributing to that change.'" *Id.* at 558-59 (quoting *Quillen v. Quillen,* 659 N.E.2d 566, 570-73 (Ind. Ct. App. 1995), *trans. granted*). Our supreme court granted transfer in *Quillen,* affirmed the trial court, and held our opinion in *Quillen* had impermissibly impinged upon the discretion of the trial court. *See id.* at 559 (citing *Quillen v. Quillen*, 671 N.E.2d 98, 103 (Ind. 1996)). Our supreme court reiterated that the selection of a valuation date for a particular marital asset has the effect of allocating the risk of change in the value of that asset during the pendency of the proceedings and that the allocation of such risk is entrusted to the discretion of the trial court. *Quillen*, 671 N.E.2d at 103. With this standard of review in mind, we address Husband's arguments regarding the trial court's choice of valuation date.

[16] Husband lists thirteen reasons why he believes the trial court abused its discretion in choosing to value the accounts at issue as of the date of filing. First, he takes issue with the trial court's characterization of his decision to resign as CEO of Paharpur as "poor judgment." Appellant's App. p. 35. Husband claims that this finding by the trial court implies some sort of fault on

his part, and he correctly notes that Indiana is a "no fault" divorce state. However, Husband's argument misses the mark. As Wife correctly notes, the concept of "fault" in a no-fault dissolution refers to the reason why the marriage failed, not fault for why a certain asset has been depleted. *See e.g., Haville v. Haville*, 825 N.E.2d 375, 379 (Ind. 2005) (noting that with the adoption of the Uniform Dissolution of Marriage Act, Indiana "eliminated the need to assign blame for the failure of a marriage, such that people frequently call it 'no-fault divorce.'"). As such, Husband's argument that the trial court impermissibly faulted him is unavailing.

[17] Husband next claims that the trial court's reference to his "poor judgment" in resigning as CEO is "insensitive, thoughtless and legally irrelevant," Appellant's Br. at 27, because Husband was being treated for depression at the time of his resignation. However, the trial court did not find that Husband was being treated for depression, and his references to the evidence that he was being treated for depression are not in favor of the trial court's judgment. Accordingly, we may not consider such evidence on appeal. *See Trabucco*, 944 N.E.2d at 558. Nor does Husband explain why the trial court's alleged insensitivity is legal error justifying reversal of the trial court's decision.

[18] Thirdly, Husband claims that the trial court's findings imply that his resignation was "part of some plan." Appellant's Br. at 27. This, Husband claims, is "ridiculous" because he claims he resigned a month before Wife filed for dissolution. *Id.* Again, however, this refers to evidence that does not favor the trial court's valuation decision, and we may not consider it on appeal. *See*

*Trabucco*, 944 N.E.2d at 558. The evidence favorable to the trial court's decision indicates that Husband did not tell Wife about his resignation until after she filed for dissolution, casting doubt on the veracity of his claim that he had resigned earlier.

[19] The same is true for Husband's fourth argument regarding the trial court's valuation decision, i.e., that the trial court erred in implying that his resignation was intentional. Husband claims this is error because he testified that his employer asked him to resign due to his mental health. Again, however, the trial court was under no obligation to credit Husband's testimony, and we may not consider it on appeal as it does not favor the trial court's judgment. *See Trabucco*, 944 N.E.2d at 558.

[20] Husband next claims that the trial court's valuation decision was improper because the trial court did not find that he misused or misspent any of the funds in the accounts at issue. While the trial court did not find that Husband misused the funds in the accounts, the trial court's findings emphasized that Husband took a position that paid significantly less than his position as CEO; Husband's new position was as advisor to the CEO even though a new CEO was not hired. Also, in reports to the Indian government and at trade shows, Husband still listed himself as CEO or managing director of Paharpur even after his resignation. It is apparent from the trial court's findings that the court did not credit Husband's version of events, i.e., that he was effectively forced to resign his higher-paying position due solely to his emotional state after discovery his wife's infidelity. The trial court also noted that after Husband's resignation, he

continued to pay for family expenses with the funds from the accounts at issue. The import of the trial court's findings are that the depletion of the accounts at issue was more attributable to Husband than to Wife. Given our deferential standard of review in such matters, we cannot say that the trial court's valuation decision was an abuse of the trial court's significant discretion.

[21] Husband's next argument simply notes that, during the pendency of the dissolution action, Husband paid approximately $16,500 to Wife and her attorney. However, Husband makes no cogent argument as to why this renders the trial court's valuation decision an abuse of discretion. *See* Ind. Appellate Rule 46(A)(8)(a) (noting that each contention in an appellant's brief must be supported by cogent reasoning); *Schwartz v. Schwartz*, 773 N.E.2d 348, 353 n.5 (Ind. Ct. App. 2002) (noting that failing to make a cogent argument as required by Rule 46(A)(8)(a) results in waiver of the issue on appeal). More importantly, Husband's argument ignores that the trial court obviously attributed Husband's significant decrease in salary to his decision to resign as CEO.

[22] Husband's eighth argument against the trial court's valuation decision is that Wife never objected to Husband's use of the accounts and even sought court permission to use some of the marital assets to purchase a replacement vehicle for her and the children. Husband cites no authority, however, to support his claim that Wife was required to object to his use of the accounts. While such an action may have been more prudent, we cannot say that it was required. With regard to Wife's request to purchase a vehicle, this was because Husband had allowed the lease on the van to expire, made no effort to provide a replacement

vehicle, and even prevented Wife from using their daughter's vehicle to transport the children.[1] Husband's argument in this regard does not persuade us that the trial court's valuation decision was an abuse of discretion.

[23] Husband's ninth reason why the trial court's valuation decision was improper is similarly unavailing. He claims that the trial court effectively ignored its own finding that his income was now $80,000 per year and that he was therefore not able to pay the family's expenses without depleting the marital assets. However, as discussed above, the trial court clearly laid the blame for the reduction in Husband's income on his decision to resign as CEO, thereby significantly reducing his salary.

[24] The same is true for Husband's tenth assertion of error, that the trial court "ignored" his efforts to be fully transparent with his expenses. Husband notes that he provided detailed financial documentation showing where and why he spent the funds in the accounts. Yet again, this ignores that the trial court believed that Husband was responsible for the significant reduction in his income as a result of his resignation as CEO.

[25] Husband's next argument regarding the trial court's valuation decision is that the depletion of the accounts was not due to market forces, as was the case in *Trabucco*. Husband claims that he could not have lessened his expenses without endangering other assets. For example, he claims that had he stopped paying

---

[1] Wife also testified that she never purchased a vehicle and was still without a car at the time of the final dissolution hearing.

the mortgage, the marital house would have gone into foreclosure. He further claims that if he stopped paying for their son's college expenses, the son would have had to quit school. Of course, the latter claim ignores the availability of student loans or part-time employment for son to help put himself through college.

[26] Simply said, Husband depleted the accounts to maintain a standard of living that neither he nor his family could afford due to his resignation as CEO. The trial court recognized that the breakup of the marriage was precipitated by Wife's infidelity. However, this does not alter the fact that Husband maintained a lifestyle that he admitted put him in a monthly budget deficit of approximately $10,000 after he resigned from his position as CEO.

[27] Husband's twelfth argument simply notes that we have held before that the "reasonable and necessary use of marital funds to pay for routine financial obligations does not constitute dissipation of assets." *Balicki v. Balicki*, 837 N.E.2d at 532, 540 (Ind. Ct. App. 2005). However, the trial court did not find that Husband dissipated assets. It simply noted that Husband used the money in the accounts to pay for family expenses due to his significantly reduced income, which itself resulted from Husband's questionable resignation as CEO of Paharpur.[2]

---

[2] Husband also briefly notes that the trial court could have given him credit for the $16,500 he paid to Wife and her attorney during the pendency of the case, citing *Herron* v. *Herron,* 457 N.E.2d 564,567 (Ind. Ct. App. 1983). However, the fact that the trial court could have done this does not mean that the trial court abused its discretion in failing to do so.

[28] Lastly, Husband again takes the trial court to task for referring to his resignation as CEO as "poor judgment" on his part, noting again that the dissolution of the marriage was precipitated by Wife's infidelity. However, Husband overlooks the trial court's acknowledgment of Wife's behavior. The trial court specifically noted that Wife had had an affair with her children's cousin, sent explicit photos and videos to the cousin, spent an inordinate amount of time each day talking or texting on her phone, and blatantly lied to the trial court when she earlier stated that her relationship with Husband's nephew had ended in 2012. Indeed, the trial court was not overly impressed with the behavior of either party, noting, "The negatives of each party seem to outweigh the positives." Appellant's App. pp. 27. However, the fact that Wife's behavior triggered the dissolution of the marriage does not mean that the trial court could not also look to Husband's behavior and conclude that the depletion of the accounts at issue was attributable to his actions, thus justifying its decision to value the accounts as of the date of filing.

[29] In summary, none of Husband's thirteen arguments, either alone or in aggregate, convinces us that the trial court abused its discretion in deciding to value the accounts awarded to Husband as of the date of filing instead of the date of the final hearing. The trial court clearly thought that the reason these accounts were depleted was due to Husband's questionable resignation of his position as CEO and his decision to maintain a family lifestyle that his reduced level of compensation could not support during the pendency of the dissolution.

## II. Failure to Consider Money from Husband's Parents as a Loan

[30]  Husband next alleges that the trial court erred when it found that money the family had received from his parents was not a loan. Husband presented evidence that, between 2005 and 2012, his parents had given him over $50,000. In support of his claim that these funds were a loan that needed to be repaid, Husband submitted into evidence a promissory note dated June 7, 2012. Husband claims that because Wife failed to object to this promissory note or present testimony to counter his claim that the funds received were a loan, the trial court was required to accept his claim. We disagree.

[31]  First, as Wife notes, Wife never agreed with Husband or stipulated as to the value of Husband's alleged debt to his parents. Wife's documentation of the marital debts excluded any alleged loans from Husband's family, indicating that she did not agree with the inclusion of this alleged debt in the marital estate.

[32]  More importantly, as the trial court explained in its findings regarding the alleged debt, Husband's evidence regarding the alleged loan casts doubt on his claim that he was required to pay back the funds. Although Husband presented significant documentation that his father helped pay for his travel expenses and made charitable donations on behalf of Husband and Wife, no indication exists in this documentation that Husband had ever made any payments on the alleged debt even when he had the resources to do so.

[33]  Ultimately, Husband's argument hinges on the promissory note evidencing the debt to his parents. However, as we noted in our recent decision in *Crider v.*

*Crider*, 15 N.E.3d 1042 (Ind. Ct. App. 2014), *trans denied,* the fact that an alleged debt is evidenced by a promissory note is not dispositive.

[34] In *Crider*, the husband claimed that the trial court had erred by failing to include as a marital debt money he had received from his father. The husband argued on appeal that because the loans were evidenced by promissory notes, the trial court was required to include them in the marital estate as liabilities. We rejected this argument, noting that our cases have held that trial courts "are not required to accept one party's characterization of funds received from a third party as a debt as opposed to an outright gift." *Id.* at 1062 (citing *Macher v. Macher,* 746 N.E.2d 120, 124 (Ind. Ct. App. 2001). Instead, when deciding whether the exchange of money is either a gift or a loan, courts should consider factors such as an expectation or agreement regarding repayment or the accrual and payment of interest. *Id. (citing Grose v. Bow Lanes, Inc.,* 661 N.E.2d 1220, 1225 (Ind. Ct. App. 1996)).

[35] The same is true here. The trial court was not required to accept Husband's characterization of the money he had received from his family as a debt, and the fact that the alleged debt is evidenced by a promissory note is not dispositive; instead, we look to whether any expectation or agreement regarding repayment and the accrual and payment of interest exists. *See id.* Here, consideration of such factors leads us to conclude that the trial court had sufficient evidence to support its conclusion that the money received was not a debt. The promissory note does not contain an interest rate or any terms of repayment. Even though many of the alleged debts secured by the promissory

note were incurred as far back as 2005, the promissory note was not executed until 2012. Under these facts and circumstances, the trial court could reasonably conclude that the funds Husband received from his family were not a debt that should be included as a liability in the marital estate. *See id.*

### III.  Distribution of the Marital Estate

[36]   Husband next claims that the trial court erred in awarding Wife sixty percent of the marital estate.[3]

[37]   The division of marital property is a task within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Id.* When we review a claim that the trial court improperly divided marital property, we will not reweigh the evidence and must consider only the evidence most favorable to the trial court's disposition of the property. *Id.* Even if the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court.  *Id.*

---

[3] Husband also claims that, since the trial court considered the value of the accounts awarded to him as of the date of filing instead of the date of the final hearing, he was effectively awarded one percent of the martial assets. However, we have already determined above that the trial court's decision with regard to the date of valuation was not an abuse of discretion. Therefore, we proceed with our analysis on the basis that Wife was awarded sixty percent of the marital assets and Husband awarded forty percent, as found by the trial court.

[38] Pursuant to Indiana Code section 31-15-7-5, an equal division of marital property is presumed to be just and reasonable.

> However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> > (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
> >
> > (2) The extent to which the property was acquired by each spouse:
> > > (A) before the marriage; or
> > > (B) through inheritance or gift.
> >
> > (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
> >
> > (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
> >
> > (5) The earnings or earning ability of the parties as related to:
> > > (A) a final division of property; and
> > > (B) a final determination of the property rights of the parties.

I.C. § 31-15-7-5. If the trial court decides to order an unequal division of marital assets, it must consider all of the factors set forth in the statute. *Love*, 10 N.E.3d at 1012. Although a trial court may abuse its discretion in considering a factor in isolation from the other four factors, the court is not required to explicitly address each factor. *Id.* at 702. However, a court on appeal must be able to infer

from the trial court's findings that all the statutory factors were considered. *Id.* at 703.

[39]   The trial court's division of marital property is highly fact sensitive. *Id.* (citing *Fobar v. Vonderahe,* 771 N.E.2d 57, 59 (Ind. 2002)). The trial court's discretion in dividing marital property is to be reviewed on appeal by considering the division as a whole, not item by item. *Id.* A trial court may deviate from an equal division so long as it sets forth a rational basis for its decision. *Id.* The party challenging the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Id.* at 1012-13. Accordingly, we will reverse the trial court's distribution decision only if no rational basis exists for the court's decision. *Id.*

[40]   Here, the trial court explicitly cited to Indiana Code section 31-15-7-5 and listed the factors relevant to an award of unequal distribution. The trial court then found:

> 122.   Petitioner's primary contribution to the parties' marital estate was her role as homemaker and primary caretaker in the raising of the parties' five (5) children.
>
> 123.   Respondent's primary contribution to the parties' marital estate was his income from employment.
>
> 124.   Petitioner's family and Respondent's family both made contributions to the parties' marital estate. The contributions from each family do not constitute a significant share of the marital estate.
>
> 125.   The economic circumstances of Petitioner and Respondent are not as positive at this time as compared to their circumstances on the date of filing due to the liquidation of assets with a value

of approximately One Hundred Ninety Five Thousand Dollars ($195,000.00) during the pendency of this case. Petitioner will receive a significant portion of the funds from the parties' Chase IRA which will improve her economic circumstances.

* * *

131. The Court does not find that Petitioner dissipated marital assets during the parties' marriage.

132. Respondent's earnings and earning ability is significantly greater than Petitioner's earnings and earning ability.

133. Petitioner has rebutted the presumption of an equal division of the parties' marital estate.

Appellant's App. pp. 15-17.

[41] Husband does not claim that the trial court failed to consider the appropriate statutory factors, nor does he directly attack the validity of the trial court's factual findings. Instead, he simply asks us to reweigh the evidence, consider evidence contrary to the trial court's judgment, and come to a conclusion different from that of the trial court. However, this is not our role on appeal. *See Love*, 10 N.E.3d at 1012-13.

[42] Furthermore, sufficient evidence supported the trial court's findings. Wife dropped out of college to stay at home with the parties' children, whereas Husband has a bachelors degree and masters degree in engineering. His income, even though currently $80,000, has the potential to be and was in the recent past nearly twice that amount, with many expenses attendant to his employment fully paid by his employer. In contrast, Wife had not been employed prior to the separation and worked as a homemaker and caregiver to

the parties' children. At the time of the final hearing, Wife had no vehicle and worked as a teachers assistant earning $8 per hour and paid over $50 per week for childcare.[4] As the marital home was awarded to Husband, Wife will have to provide for housing. Under the facts and circumstances of the present case, we cannot say no rational basis existed for the trial court's distribution of marital assets.

## IV. Attorney Fees

[43]    Lastly, Husband claims that the trial court clearly erred in ordering him to pay $14,000 of Wife's attorney fees. As we explained in *Hartley v. Hartley:*

> Indiana Code Section 31-15-10-1 provides that a trial court may order a party to pay a reasonable amount to the other party for the cost of maintaining or defending any action in dissolution proceedings. We review a trial court's award of attorney fees in connection with a dissolution decree for an abuse of discretion. The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. When making such an award, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and other factors that bear on the reasonableness of the award. Consideration of these factors promotes the legislative purpose behind the award of attorney fees, which is to insure that a party in a dissolution proceeding, who would not otherwise be able to afford an attorney, is able to retain representation. When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper. The trial court need not, however, give reasons for its determination.

---

[4] Although Wife was enrolled in classes at Indiana University Purdue University—Fort Wayne, the trial court found that Wife was not adequately committed to completing her college education and earning a degree.

862 N.E.2d 274, 286-87 (Ind. Ct. App. 2007) (citations and internal quotations omitted).

[44] Here, the trial court ordered Husband to pay $11,000 to Wife for her attorney fees, in addition to $3,000 he was previously ordered to pay but had not yet paid. Husband claims that given that the trial court's uneven distribution of the marital assets, which he claims is exacerbated by the trial court's act of awarding him certain accounts that now have very little value, the order for him to pay $14,000 in attorney fees is erroneous.

[45] However, considering only the evidence favorable to the trial court's decision, we cannot say that the trial court abused its discretion. The trial court's findings reveal that Husband's economic and his income-earning capabilities are significantly greater than Wife's. As noted above, Husband has an advanced degree in engineering and has demonstrated the ability to earn significantly more than his current $80,000 per year salary. Wife, at the time of the final dissolution hearing, earned $8 per hour. Under these facts and circumstances, we cannot say that the trial court abused its discretion in ordering Husband to pay $14,000 to Wife for attorney fees.

## Conclusion

[46] The trial court did not abuse its discretion in choosing a valuation date for certain marital assets that were subsequently depleted by Husband's spending; nor did it abuse its discretion in failing to consider the funds Husband had received from his family as a marital debt. Likewise, the trial court did not

abuse its discretion in awarding sixty percent of the marital estate to Wife considering Husband's significantly greater earning potential. Lastly, the trial court did not abuse its discretion in ordering Husband to pay $14,000 to Wife for attorney fees.

Affirmed.

May, J., concurs.

Robb, J., concurs in result without opinion.