## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 19 2019, 9:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian M. Pierce
Muncie, Indiana

ATTORNEY FOR APPELLEE

Julie-Marie Brown
Miller, Burry & Brown, P.C.
Decatur, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David Brown, <br> *Appellant*, <br><br> v. <br><br> Kimberly Brown, <br> *Appellee*. | December 19, 2019 <br><br> Court of Appeals Case No. 19A-DN-1494 <br><br> Appeal from the Jay Superior Court <br><br> The Honorable Kimberly S. Dowling, Special Judge <br><br> Trial Court Cause No. 38D01-1712-DN-96 |

**Brown, Judge.**

[1] David Brown ("Husband") appeals the trial court's distribution of the marital estate and attorney fee award. Kimberly Brown ("Wife") requests appellate attorney fees. We affirm the order of the trial court and deny Wife's request for appellate attorney fees.

### Facts and Procedural History

[2] Husband and Wife became romantically involved in December 2006 and began living together in August 2007 at Husband's house on 2nd Street in Portland, Indiana.[1] Wife bought a house and moved out in 2012. The parties purchased a residence on 450 South in November 2015. Husband began living with Wife at her house in January 2016. Husband and Wife were married in February 2016, and they moved into the house on 450 South in the summer of 2016. According to Wife, she and Husband had "an on and off relationship" since 2006 and the relationship spanned twelve years. Transcript Volume 2 at 8.

[3] In December 2017, Wife filed for divorce. The chronological case summary shows that Wife filed a motion for authorization to have real estate appraised and that she later filed a motion to compel compliance which the court granted. The court heard evidence in November 2018 and April 2019. Wife presented, as Petitioner's Exhibit No. 7, a summary of the marital assets and debts including the parties' bank accounts, retirement accounts, real property, vehicles, personal property, and debts. In addition to appraisals of the real

---

[1] At that point, the house on 2nd Street was titled in the name of Husband's father, but it was later conveyed to Husband.

properties, Wife presented exhibits itemizing the parties' personal property including their firearms, tools, furniture, appliances, vehicles, motorcycles, lawnmower, and golf carts. She testified that most of the marital property was acquired by the parties since 2006, she contributed to mortgage payments for the house on 450 South which consisted of forty acres, the house was titled in both parties' names, and they made improvements including remodeling a bathroom and installing new flooring, siding, roofing, windows, faucets, and appliances. She testified that she contributed financially to the house on 2nd Street including a back-tax payment, the house was now a rental, and Husband received the rental income.

[4] Wife testified in detail regarding the personal property and vehicles in her possession and Husband's possession. She indicated a 1973 Corvette was in Husband's possession, it was not appraised at the time of the appraisals because it was not at the house, and Husband was having it restored in Marion. She believed the Corvette was worth $5,000 because Husband "said that a year ago it was probably worth Thirty-Five Thousand. He said it might be worth Twenty Thousand now," and testified "[s]o I just said . . . ($5,000) just to, because I didn't know for sure, but just Five Thousand." *Id*. at 25-26. She believed Husband had retirement accounts which he did not disclose to her. She testified regarding her motion to compel and that Husband provided very little information, did not answer all the discovery questions, and did not provide requested documentation. She testified that she earned about $400 a week, that Husband did not provide information regarding his earnings, and

that, at his last employment before the parties separated, his checks were usually around $1,000 to $1,200 a week. She indicated that, although Husband had higher earnings, she contributed to the household expenses both before and after they were married. She testified that Husband broke her cell phone and the cost to replace it, and that Husband never returned equipment related to television service.

[5] On May 30, 2019, the court issued an Order of Property Distribution which included findings regarding the parties' real property, vehicles, personal property, retirement accounts, and debts. The court awarded the real properties to Husband and distributed the personal property, found that its division was an equal division and that the parties lived together on and off for several years before marrying, and ordered that Husband pay Wife $66,098, that the parties equally split the costs of the appraisals, and that Husband pay Wife $910.59 for destroying her cell phone and not returning equipment. The court also ordered Husband to pay $8,000 toward Wife's attorney fees.

## *Discussion*

### I.

[6] Husband claims the trial court erred in valuing and distributing the marital property. In particular, he argues "the numbers don't 'add up' to an equal distribution of assets or debts," the values of the Corvette and gun collection are unresolved, and the court should have considered the short duration of the marriage. Appellant's Brief at 11. Wife maintains the exhibits and testimony support the court's valuations and distribution.

[7]     The Indiana Supreme Court has expressed a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993). When a trial court has made findings of fact, we determine whether the evidence supports the findings and whether the findings support the conclusions thereon. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). Findings will be set aside if they are clearly erroneous, which occurs when the record contains no facts to support them directly or by inference. *Id.*

[8]     The division of marital property is within the sound discretion of the trial court. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). We consider only the evidence most favorable to the court's disposition. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.* The court must divide the marital estate in a just and reasonable manner, and an equal division is presumed just and reasonable. *McGrath v. McGrath*, 948 N.E.2d 1185, 1187-1188 (Ind. Ct. App. 2011) (citing Ind. Code § 31-15-7-5). The presumption may be rebutted by evidence of certain factors including the contribution of each spouse to the acquisition; the extent to which the property was acquired before the marriage or through inheritance or gift; the economic circumstances of each spouse at the time of the disposition; the conduct of the parties during the marriage; and the earnings or earning ability of the parties. Ind. Code § 31-15-7-5. The party challenging the court's division must overcome a strong presumption that it considered and complied with the applicable statute.

*McGrath*, 948 N.E.2d at 1188. Marital property includes property owned by either spouse prior to the marriage, acquired after the marriage and prior to final separation, or acquired by their joint efforts. *Id.* The court's disposition of the marital estate is to be considered as a whole, not item by item. *Id.*

[9] The trial court heard testimony regarding the length of the parties' relationship, the two parcels of real estate, when the properties were acquired, the various improvements made to the properties, the parties' contributions to the household expenses, and the value of the marital assets and debts including the real properties, vehicles, bank and retirement accounts, tools, furniture, firearms, other personal property, and debts. Petitioner's Exhibit No. 7 included a summary of the marital assets and debts with assigned values for each item which stated the parties' total assets were $475,962.87, their total debts were $299,959.55, and the net marital estate was $176,003.32, and which, after assigning the real properties to Husband and dividing the other property, recommended that Husband make an equalization to Wife of $65,351.27. The court distributed the real properties to Husband and divided the vehicles and personal property between the parties. The court's order provided that it utilized the values listed on Petitioner's Exhibit No. 7, found the values used were reasonable, and ordered Husband to pay Wife $66,098. As for the 1973 Corvette, Wife indicated that it was not appraised at the time of the appraisals because it was not at the house, that Husband was having it restored, and that Husband had stated it might be worth $20,000. The court's order specifically found that the value assigned to the Corvette of $5,000 was reasonable. As for

the gun collection, Petitioner's Exhibit No. 7 assigned the firearms, valued at $5,930, to Husband. Wife also submitted Petitioner's Exhibit No. 3 which listed eight firearms with estimated values for each firearm, listed a Ruger revolver with an estimated value of $500 to $600, and provided a total approximate value for the firearms of $5,540 to $6,320. While Petitioner's Exhibit No. 7 assigned all of the firearms to Husband, Wife testified that the Ruger firearm was her father's and that she desired to keep it. The court ordered that Wife have the items in her possession including the Ruger firearm. The valuations utilized by the court were within the range of values presented by the evidence. Based upon the record, we cannot say that the trial court abused its discretion in distributing the marital property.

## II.

[10] Husband further argues the trial court should not have ordered him to pay attorney fees and states that "it is true that [he] was untimely and difficult in his discovery responses" but that "based on the results achieved, [Wife] wasn't prejudiced at all." Appellant's Brief at 15. Wife maintains that Husband's conduct throughout the proceedings, including forcing her to obtain an order to comply with discovery requests, supports the attorney fee award. She also requests appellate attorney fees.

[11] In dissolution proceedings, the trial court may order a party to pay a reasonable amount for the other's attorney fees. *Luttrell v. Luttrell*, 994 N.E.2d 298, 305 (Ind. Ct. App. 2013) (citing Ind. Code § 31-15-10-1), *trans. denied*. The trial

court has broad discretion in awarding attorney fees. *Id*. The court may consider the resources of the parties, their relative earning abilities, and other factors which bear on the reasonableness of the award. *Id*. The court may also consider any misconduct that causes a party to incur additional fees. *See Bessolo v. Rosario*, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012), *trans. denied*.

[12] The trial court ordered Husband to pay $8,000 toward Wife's attorney fees. It found that Husband created issues with discovery by providing answers late, by not providing detailed information on bank accounts or retirement funds, and by continuing hearings, and that his behavior caused Wife to incur additional attorney fees. It found that Wife's attorney filed an appropriate fee affidavit with itemized billing, Wife provided her income, and Wife requested Husband's income in discovery but he refused to provide it. We cannot say the trial court abused its discretion in awarding attorney fees.

[13] As for appellate attorney fees, this Court is authorized to assess damages if an appeal "is frivolous or in bad faith," and such damages "shall be in the Court's discretion and may include attorneys' fees." Ind. Appellate Rule 66(E). A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Bessolo*, 966 N.E.2d at 734. To prevail on her request, Wife must show that Husband's arguments on appeal are "utterly devoid of all plausibility." *See id*. While we conclude that the trial court did not abuse its discretion distributing the marital estate or awarding attorney fees, we cannot

say that Husband's arguments on appeal are "utterly devoid of all plausibility" or that an award of appellate attorney fees is appropriate.

[14] We affirm the judgment of the trial court and deny Wife's request for appellate attorney fees.

[15] Affirmed.

[16] Baker, J., and Riley, J., concur.