

FILED

Jan 20 2016, 10:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Judy M. Tyrrell
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Heather George Myers
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shari L. Morey, <br> *Appellant-Defendant/Cross-Appellee,* <br><br> v. <br><br> W. Michael Morey, <br> *Appellee-Plaintiff/Cross-Appellant.* | January 20, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1502-DR-64 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James B. Osborn, Judge <br><br> Trial Court Cause No. <br> 49D14-1402-DR-3275 |

**Mathias, Judge.**

The marriage of Shari ("Wife") and W. Michael ("Husband") Morey was dissolved in Marion Superior Court. Wife appeals the decree of dissolution and raises three issues, which we restate as:

  I.  Whether the trial court erred in in its application of the coverture fraction formula to Husband's Reynolds & Reynolds pension;
  II. Whether the trial court abused its discretion in failing to credit Wife's payment of Husband's post-dissolution expenses and;

III.    Whether the trial court abused its discretion in its valuation of the marital residence.

Husband cross-appeals and argues that the trial court abused its discretion when it found that Husband failed to rebut the presumption that an equal division of marital property was just and reasonable. He also asserts that the trial court erred when it failed to apply the coverture fraction formula to his annuity and 401(k).

We affirm.

## Facts and Procedural History

Husband and Wife were married on April 13, 1991. Husband had worked in Reynolds & Reynolds's ("Reynolds") IT Department since 1983. Husband's position was eliminated, and he was laid off on February 15, 2006. In total, Husband worked at Reynolds for twenty-two years, eight of those years before he married Wife. As an employee, Husband earned retirement savings, which included a Reynolds pension, an annuity, and a 401(k).

After Husband was laid off, he worked as a temporary contractor at Hewlett-Packard for two years but was not hired on full time after the contract ended. Although Husband has continued to search for employment, he has been unsuccessful in obtaining a job due to advancements in the technology field that have surpassed his training. After losing his job at Reynolds, Husband was diagnosed with depression, which has made finding employment even more difficult. For two and one-half years prior to the hearing, Wife has worked for

Dow AgroSciences. Like Husband, Wife has earned retirement benefits from her employer which include an IRA, a Roth IRA, and a 401(k).

[6]     Wife filed a petition for dissolution of marriage on February 6, 2014. The trial court held a hearing on December 4, 2014. Wife presented testimony from a pension valuation expert that Husband's Reynolds defined benefit pension was worth $100,498.07 on the date of separation. Husband requested that the trial court exclude 36% of the pension from the marital pot based on the coverture fraction formula because he was not married to Wife while working at Reynolds for the first eight years.

[7]     During the hearing, Wife testified that she kept the couple's 2013 federal tax return in the amount of $3,955 to pay the additional $1,200 in credit card charges that Husband incurred after Wife filed the petition for dissolution. She also stated that she never received her half of the $338 from the 2013 state tax return paid to Husband.

[8]     Further, Wife presented testimony from a realtor who had performed a comparative market analysis on the marital residence. The realtor testified that the residence would sell for between $282,000 and $287,000, with the average price of comparable houses selling for $299,300. Husband testified that the house was valued at $300,000.

[9]     The trial court issued its finding of facts, conclusions of law, and decree of dissolution of marriage on January 5, 2015. It determined that Husband was unable to rebut the presumption that an equal division of the marital property

was just and reasonable but applied a 14/22 coverture fraction to his Reynolds defined benefit pension, allocating $63,953.28 to the marital estate. Half of the pension, based on the coverture fraction formula, was awarded to Wife, and half was awarded to Husband. However, the court declined to extend the coverture fraction formula to Husband's annuity and 401(k) because Husband failed to present evidence to establish what portions of the benefits were accrued before marriage.

In its equal division of the marital property, the court awarded Wife her:

- IRA valued at $91,372;
- Roth IRA valued at $45,391; and
- 401(k) valued at $103,262.

The court awarded Husband his:

- annuity valued at $190,842;
- 401(k) valued at $192,319 and;
- the additional 36% of the Reynolds pension accrued prior to marriage amounting to $36,544.79.

The court also awarded the federal tax return to Wife and the state tax return to Husband with no indication of a credit to Wife for the $1,200 she paid for Husband's credit card charges incurred after the dissolution petition was filed. The court also valued the marital residence at $299,300, which includes a $192,292 mortgage.

On February 4, 2015, Husband filed a motion to correct error alleging among other issues that the trial court erred by failing to apply the coverture fraction

formula to his annuity and 401(k). On February 12, 2015, the trial court denied Husband's motion but issued an amended decree of dissolution to include the vehicle identification number ("VIN") of Husband's van. Wife and Husband both appeal the decree of dissolution.

## Standard of Review

[14] Both Wife and Husband requested findings of fact and conclusions of law under Indiana Trial Rule 52(A), which prohibits this court from setting aside the trial court's judgment "unless clearly erroneous." *In re Marriage of Nickels*, 834 N.E.2d 1091, 1095 (Ind. Ct. App. 2005) (citing *Dunson v. Dunson*, 769 N.E.2d 1120, 1123 (Ind. 2002)). When a trial court has made special findings of fact, its judgment is "clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment." *Id.*

[15] The trial court's valuation of marital assets will only be disturbed for an abuse of discretion. *Id.* As long as evidence is sufficient and reasonable inferences support the valuation, an abuse of discretion does not occur. We will not weigh the evidence and will consider the evidence in the light most favorable to the judgment. *Id.* "Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court." *Id.* (quoting *Bizik v. Bizik*, 753 N.E.2d 762, 766 (Ind. Ct. App. 2001)).

## I. Presumption of an Equal Division of Marital Property

Husband asserts that the trial court abused its discretion in finding that he did not rebut the presumption of an equal division of marital property. Specifically, Husband argues that the trial court's findings do not support its conclusions of law because the court found that several statutory factors supporting an unequal division of marital property weighed in Husband's favor.

Under Indiana Code section 31-15-7-4(a):

> In an action for dissolution of marriage, the court shall divide the property of the parties, whether:
>
> (1) owned by either spouse before the marriage;
>
> (2) acquired by either spouse in his or her own right:
>
> (A) after the marriage; and
>
> (B) before final separation of the parties or
>
> (3) acquired by their joint efforts.

"The 'one-pot' theory of [Indiana Code section 31-15-7-4] specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award." *Thompson v. Thompson*, 811 N.E.2d 888, 914 (Ind. Ct. App. 2004). While the trial court may ultimately decide to award an asset solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided. *Id.* (citing *Lulay v. Lulay*, 591 N.E.2d 154, 155 (Ind. Ct. App. 1992)).

[19]     A trial court should presume that an equal division is just and reasonable, but a

party may present evidence to rebut this presumption using the following

statutory factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
>> (A) before the marriage; or
>>
>> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:
>
>> (A) a final division of property; and
>>
>> (B) a final determination of the property rights of the parties.

Ind. Code § 31-15-7-5 (1997).

Here, the trial court weighed all of the factors outlined in Indiana Code section 31-15-7-5 and entered the following findings of fact before concluding that the presumption had not been rebutted:

1. During the marriage, Wife contributed far more to the acquisition of the property. Husband has been unemployed for approximately seven years. Wife, on the other hand, has a full-time job, has been paying all of the household bills so that Husband has only recently had to use his retirement funds for living expenses. Wife has, in the meantime, been paying down the mortgage and building up retirement funds which are included in the marital estate. Factor 1 weighs in favor of Wife.

2. A portion of Husband's two retirement accounts and his pension were earned prior to the marriage. Factor 2 weighs in favor of Husband.

3. Wife is employed and Husband is voluntarily unemployed. Factor 3 weighs slightly in favor of Husband.

4. No evidence was presented that either party dissipated property or unnecessarily disposed of assets. Factor 4 weighs in favor of neither party.

5. Wife's earnings are higher than Husband's. Husband may have been less than energetic in his efforts to obtain employment, but he has been limited in his abilities to obtain work in his chosen field because technology advances over the last eight years have surpassed his training and experience. No evidence was presented that Husband cannot work. Factor 5 weighs slightly in favor of Husband.

Appellant's App. pp. 56-57.

[21] These findings are supported by the evidence and after weighing the five factors, the trial court concluded that an equal division was just and reasonable. Husband's argument is simply a request to reweigh the evidence, which we will not do. The trial court's conclusion that an equal division is just and reasonable is supported by the evidence. *See In re Marriage of Nickels*, 834 N.E.2d at 1095.

### A. Coverture Fraction Formula

[22] Wife contends that although the trial court correctly concluded that the marital estate should be divided equally, it erred when it applied the coverture fraction formula to Husband's Reynolds pension. Conversely, Husband argues that the trial court correctly applied the coverture fraction formula to his Reynolds pension but erred when it did not apply the same formula to his annuity and 401(k). Husband asserts that the coverture fraction formula should be applied because he started accruing these benefits eight years before he married Wife.

> The "coverture fraction" formula is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses. Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued.

*In re Marriage of Fisher*, 24 N.E.3d 429, 433 (Ind. Ct. App. 2014) (quoting *Hardin v. Hardin*, 964 N.E.2d 247, 250 (Ind. Ct. App. 2012)).

[23] The doctrine of coverture dates back early in English common law, where husband and wife were legally viewed as one person. Claudia Zaher, <u>When a Woman's Marital Status Determined Her Legal Status: A Research Guide on the Common Law Doctrine of Coverture</u>, 94 Law Libr. J. 459, 460 (2002). Essentially, while married, the wife was "covered" or protected under her husband's wing, and this condition was called her "coverture." *Id.* The doctrine eroded during the Industrial Revolution as society began to recognize women as separate legal persons. *Id.* at 461.

[24] In modern times, courts have retained remnants of the doctrine of coverture, expressed in the coverture fraction formula. However, the purpose of the formula has been broadened to account for the accumulation of pre-marital assets by the parties to a marriage and the equitable distribution of those assets in the event of divorce. The coverture fraction formula is a separate tool that the court may use to determine how much of an asset should be included in the marital pot. *See* Brett R. Turner, 2 Equitable Distribution of Property 3d § 6:25 (demonstrating use of coverture fraction formula to determine which portion of defined-benefit pension plan constitutes marital property and which portion constitutes separate property).

[25] In Indiana, trial courts have historically exercised their discretion to apply the coverture fraction formula when allocating and distributing pension and retirement benefits in dissolution of marriage proceedings, but that discretion has been inconsistently applied. Confusion arises in cases, such as the case before us, where a trial court determines that an equal division was just and

reasonable but then applies the coverture fraction formula, resulting in an unequal division of marital property. We recognize that the division of marital property in dissolution of marriage proceedings is highly fact sensitive, but retirement plans are often the largest and most valuable marital asset, so understanding when and how to apply this formula is essential.

[26] Division of marital assets and the application of the coverture fraction formula in a dissolution of marriage proceeding is a multi-step process. We believe that the clearest way to apply it is as follows.

[27] First, the trial court should identify what assets should be segregated from the marital pot by operation of law. The coverture fraction formula at issue here is just one method that allows the spouse who acquired the asset to segregate what might otherwise be considered marital property from the marital pot. If the trial court determines in its discretion that a given asset should be segregated from the marital pot for application of the coverture fraction formula, the percentage derived from the formula should be applied to the entire benefit to determine the marital portion of that benefit. Importantly, the pre-marital portion of the benefit is then set aside for the spouse who acquired it, for distribution outside of the division of the assets in the marital pot.

[28] Although the coverture fraction formula is at issue here, over the years, Indiana courts have determined that other types of property can also be excluded from the marital pot, including: 1) inheritance; 2) future income; and, 3) unvested retirement benefits. *See* Ind. Code § 31-15-7-4(b)(4); *see also Castaneda v.*

*Castaneda*, 615 N.E.2d 467, 470 (Ind. Ct. App. 1993) (the trial court's setting aside to wife funds inherited from her father as it divided marital property was not an abuse of discretion, where wife introduced evidence that inheritance was kept in wife's name and that husband did nothing to contribute to accumulation of funds, that inheritance funds were never commingled with other assets brought into marriage, and that wife did not treat them as marital property); *Sadler v. Sadler*, 428 N.E.2d 1305, 1307 (Ind. Ct. App. 1981) (holding that a trial court could not award an interest in a spouse's future income, whether the source of that income constitutes salary, pension, or retirement benefits); *Harris v. Harris*, 31 N.E.3d 991, 997 (Ind. Ct. App. 2015) (holding that although it is well established that for a pension to be included in the martial pot, it must be vested). Once identified by the trial court, such assets may also be segregated and awarded to the spouse who acquired the assets prior to marriage, outside of the division of the assets in the marital pot.

[29] Next, the trial court must gather all the non-excluded marital assets and place them into one pot subject to division under Indiana Code section 31-15-7-4. Then, the court must determine whether the presumption that an equal division is just and reasonable has been rebutted. If a trial court determines that an equal division is just and reasonable, the marital pot is divided equally between Husband and Wife. *See Barton v. Barton*, WL 7983011, at *8 (Ind. Ct. App. Dec. 7, 2015, *trans. pending*). If the trial court determines that a party has rebutted the presumption of an equal division of the marital pot and decides to deviate from

an equal division, then it must state its reasoning in its findings and judgment. *Hartley v. Hartley*, 862 N.E.2d 274, 285 (Ind. Ct. App. 2007).

### 1. Reynolds Pension

[30]     Wife argues that the trial court erred in applying the coverture fraction formula because it caused an unequal division of marital property.[1] However, that assertion conflates the concept behind the correct application of the coverture fraction formula with presumptive equal division under the statute. Presumptive equal division applies only to assets determined to be properly includable in the marital pot. As set forth above, the coverture fraction formula operates to segregate a percentage of a given asset from the marital pot while including the balance of the asset in the marital pot. Although the trial court here reversed the better order of the application of the coverture fraction formula, it reached the correct result when it applied the coverture fraction formula to the pension, allocating 14/22[2] or $63,953.28, to the divisible marital estate; determined that an equal division of marital property was just and reasonable; and then equally divided half of the marital portion of the pension, allocating $31,976.64 of the net asset to each party.

---

[1] Wife argues that Husband admitted on cross-examination that he was not vested during part of the eight years before the marriage that he worked at Reynolds. Tr. p. 118. Husband testified that he did not know when he was first vested. Tr. pp. 116, 118. In *In re Marriage of Fisher*, this court determined that even if Husband's pension did not vest until ten years of employment, the years he was employed prior to vesting were integral to earning his pension. 24 N.E.3d at 433. We concluded that the coverture fraction formula was applicable to years of employment prior to the time when the pension vested. *Id.*

[2] Husband and Wife were married for 14 of the 22 years Husband was employed at Reynolds.

### 2. Husband's Annuity and 401(k)

[31] Husband asserts that the trial court erred when it failed to apply the coverture fraction formula to his annuity and 401(k). At the hearing, Husband testified that his Reynolds pension, annuity, and 401(k) started accruing when his employment began in 1983. He also testified that he did not know the value of either the Reynolds pension or 401(k) on the date of marriage and that he was not completely vested in the Reynolds pension or the 401(k) during part the eight years he worked at Reynolds prior to marriage.

[32] It is always the burden of the spouse seeking segregation of an asset from the marital estate to prove the grounds for that segregation and the amount to be segregated. The trial court concluded that Husband did not present evidence for the court to determine what portions of his annuity and 401(k) accrued prior to marriage. We agree with the trial court that Husband did not carry his burden on this issue, and we conclude that it was within the trial court's discretion to decline to apply the coverture fraction formula to Husband's annuity and 401(k). *See In re Marriage of Fisher*, 24 N.E.3d at 433.

## II. Federal Tax Refund

[33] Next, Wife contends that the trial court erred by not awarding her credit for $1,200 in credit charges incurred by Husband that Wife paid after she filed the petition for dissolution. Wife asserts that she used the parties' 2013 federal tax return to pay these charges. In dissolution actions, the marital pot generally closes on the date the dissolution petition is filed. *Alexander v. Alexander*, 927 N.E.2d 926, 940 (Ind. Ct. App. 2010). Therefore, debts incurred by one party

after the dissolution petition has been filed are not to be included in the marital pot. *Id.*

[34] At the hearing, the only evidence to support Wife's claim that she paid Husband's post-dissolution credit card charges and she reimbursed herself with the federal tax return was her testimony.[3] Husband testified that he had no knowledge of this arrangement because it was never discussed. The trial court has discretion to weigh the credibility of each witness, and we may not substitute our judgment here. For these reasons, the trial court did not err in failing to credit Wife's $1,200 payment for Husband's post-dissolution expenses.

### III. Valuation of the Marital Residence

[35] Finally, Wife asserts that the trial court abused its discretion when it valued the marital residence at $299,300, which she claims is not supported by the evidence. Wife's realtor testified at the hearing that the marital residence would sell for between $282,000 and $287,000 with the average price of comparable houses selling for $299,300. Tr. pp. 39-40. Husband also testified that he believed the house was worth $300,000. Both the realtor's testimony and Husband's testimony provide sufficient evidence to support the trial court's

---

[3] Wife provided in her Appendix what is referred to as Exhibit 16. Appellant's App. p. 91. Exhibit 16 is the parties' joint Discover Card statement dated February 18, 2014, which details Husband's moving expenses amounting to about $1,200 incurred on February 11 and 12, 2014. These charges were made after Wife filed the petition for dissolution on February 6, 2014. However, Exhibit 16 was not admitted into evidence at the hearing and may not be submitted for the first time on appeal. *See Saler v. Irick*, 800 N.E.2d 960, 970 (Ind. Ct. App. 2003).

valuation. *See In re Marriage of Nickels*, 834 N.E.2d at 1095. Again, we respect the trial court's discretion in making this determination, and we conclude that it did not abuse its discretion in its valuation of the marital residence.

## Conclusion

[36] The trial court did not err when it applied the coverture fraction formula to Husband's defined benefit pension thereby segregating a portion of Husband's Reynolds pension from the marital estate, even though it determined that Husband failed to rebut the presumption that an equal division of the marital estate was just and reasonable. However, Husband failed to carry his burden of proof as to the grounds and amount for similar segregation of a portion of his annuity and 401(k), and the trial court did not abuse its discretion when it did not apply the coverture fraction formula to Husband's annuity and 401(k). Finally, the trial court did not abuse its discretion when it failed to credit Wife's payment of Husband's post-dissolution expenses, or in its valuation of the marital residence.

[37] Affirmed.

Bailey, J., concurs.

Baker, J., concurs in result with opinion.

| | |
|---|---|
| Shari L. Morey, <br> *Appellant-Defendant/Cross-Appellee,* <br><br> v. <br><br> W. Michael Morey, <br> *Appellee-Plaintiff/Cross-Appellant.* | Court of Appeals Case No. <br> 49A02-1502-DR-64 |

**Baker, Judge, concurring in result.**

[1] I fully concur with the majority opinion with the exception of its analysis related to the coverture fraction. As the majority observes, the doctrine of coverture has its origin in an outdated and misogynist view of the respective roles and rights of men and women. Slip op. p. 10. In my view, it is long since time that the State of Indiana should discard this archaic doctrine, especially since it is no longer needed.

[2] Coverture is a creation of common law. Slip op. p. 10. But in 1973, the Indiana General Assembly passed the Dissolution of Marriage Act, which has since been amended and recodified multiple times. *See Anderson v. Anderson*, 399 N.E.2d 391, 397 n.9 (Ind. Ct. App. 1979) (noting that the Act became effective

on September 1, 1973). At present, division of property in a dissolution of marriage action is governed primarily by Indiana Code sections 31-15-7-4 and -5. Section 4 codifies the "one pot" theory, specifying that all property of the parties must be divided by the trial court. After placing all of the property into the pot, the trial court may then set aside certain assets to one party, taking into consideration multiple factors, including the extent to which the property was acquired by a party before the marriage. I.C. §§ 31-15-7-4, -5. The trial court may then divide the remainder, and although there is a presumption of an equal division of the "pot," that presumption is readily overcome by evidence relating to the relevant factors. I.C. § 31-15-7-5. In other words, by applying the statutes passed by our legislature, we can arrive at the same place as if the coverture fraction had been applied.

[3]     In my opinion, the coverture fraction has been superseded by statute for decades. Given that it has been superseded, and given its roots in an aspect of our history that we have gladly put behind us, I believe that the outmoded theory should no longer be applied in this State, and I part ways with the majority in its application of this doctrine. That said, if the relevant statutes were applied to this case as opposed to the coverture doctrine, I believe that the same result would be reached. Consequently, I concur in the result reached by the majority on this issue. In all other ways, I fully concur with the majority opinion.