## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 29 2016, 8:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine J. Noel
Noel Law
Kokomo, Indiana

ATTORNEY FOR APPELLEE

Nicholas K. Gahl
Gahl Legal Group
Zionsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sandra Winslow,<br>*Appellant*,<br><br>v.<br><br>Fred Winslow,<br>*Appellee*. | September 29, 2016<br><br>Court of Appeals Case No.<br>34A02-1602-DR-421<br><br>Appeal from the Howard Circuit Court<br><br>The Honorable Lynn A. Murray, Judge<br><br>Trial Court Cause No.<br>34C01-1209-DR-1011 |

**Brown, Judge.**

[1] Sandra Winslow ("Wife") appeals from the trial court's decree of dissolution. Wife raises three issues which we consolidate and restate as:

I. Whether the court abused its discretion in valuing certain marital property and dividing the marital property; and

II. Whether the court abused its discretion in denying her request for spousal maintenance.

We affirm.

## Facts and Procedural History

[2] Wife and Fred Winslow ("Husband") were married in November 1982. On September 24, 2012, Wife filed a petition for dissolution of marriage. On September 16, 2015, the court held a final hearing at which the parties presented evidence and testimony regarding their incomes and property, including certain real property consisting of approximately sixty-eight acres of farmland which Husband and two of his siblings had inherited, and funds in the parties' Edward Jones account. The parties submitted proposed findings of fact and conclusions following the hearing.

[3] On December 7, 2015, the court entered a decree of dissolution including findings which relate to the parties' employment and earnings, social security and pension benefits, health conditions and health care costs, the value of certain real property including the farmland and the former marital residence, the value of and debt associated with various vehicles, the funds in the parties' accounts, and their personal property and household goods.

[4] The court found that Husband had a one-third interest in the farmland and that his interest had a value of $43,900. It found that the Edward Jones account had a value of $86,558.50 and that it was funded during the marriage with money Husband received from his father and with sums received by Wife from a settlement in connection with a medical malpractice claim arising from the death of her daughter, and it awarded $60,529.60 of the funds to Husband and $26,028.90 to Wife. The court further found that, as part of the malpractice settlement, Wife received a lump sum cash payment, which was used in part to fund the Edward Jones account and in part was consumed by the parties to their joint benefit during the marriage, and two monthly annuities. It found that the former marital residence was acquired by the parties as a gift or inheritance from Husband's parents and had a value of $98,300 based upon the assessment of the Howard County Assessor, and it awarded the residence to Wife. The court also found that each party contributed to the martial estate, in part by Husband through gift and inheritance and in part by Wife through structured settlement proceeds, and that, after application of all relevant factors and findings, an equal distribution was fair and equitable.

[5] The court also noted that Wife claimed she was entitled to spousal maintenance and requested the court to order Husband to provide her with health insurance coverage until she is eligible for Medicare. The court concluded: "Here, the Wife is employed part-time and receives income in addition to her wages. There has been no showing she meets the necessary criteria to which the Husband should pay or provide her maintenance under Indiana law. As such,

her request for spousal maintenance must be and is denied." Appellant's Appendix at 25.

[6] Under the heading of "Decree of Dissolution," the court identified and distributed the parties' assets and debts, awarded Wife fifty percent of the coverture portion of Husband's pension, and ordered Husband to transfer his interest in the former marital residence to Wife. *Id.* at 25. The court also attached an "Exhibit B" identifying the assets and debts distributed to the parties and their values. *Id.* at 32. The exhibit shows a value of $43,900 for the farmland distributed to Husband and a value of $86,558.50 for the Edward Jones account with a distribution of $26,028.90 to Wife and $60,529.60 to Husband. The exhibit also shows that the value of Wife's total net distribution is $153,317.26 and the value of Husband's total net distribution is $153,317.27. Wife filed a motion to correct errors arguing that the court erred in valuing the farmland, and the court denied her motion.

## *Discussion*

### I.

[7] The first issue is whether the trial court abused its discretion in valuing the farmland or in dividing the marital property. When a trial court has made findings of fact, we apply the following two-step standard of review: whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). Findings will be set aside if they are clearly erroneous. *Id.* Findings are

clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.* We generally review rulings on motions to correct error for an abuse of discretion. *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 18 (Ind. Ct. App. 2015).

[8] Ind. Code § 31-15-7-4 governs the division of property in dissolution actions and requires that the trial court "divide the property in a just and reasonable manner." Ind. Code § 31-15-7-4(b). The court shall presume that an equal division of marital property between the parties is just and reasonable and may deviate from an equal division only when that presumption is rebutted. Ind. Code § 31-15-7-5. The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Hartley v. Hartley*, 862 N.E.2d 274, 285 (Ind. Ct. App. 2007) (citation omitted). The trial court's division of marital property is "highly fact sensitive and is subject to an abuse of discretion standard." *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002). Also, a trial court's discretion in dividing marital property is to be reviewed by considering the division as a whole, not item by item. *Id.* We will not weigh evidence, but will consider the evidence in a light most favorable to the judgment. *Id.*

[9] It is well-established that all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or

acquired by their joint efforts. *See* Ind. Code § 31-15-7-4(a); *Beard v. Beard*, 758 N.E.2d 1019, 1025 (Ind. Ct. App. 2001), *trans. denied*. This "one-pot" theory ensures that no asset is excluded from the trial court's power to divide and award. *Thompson v. Thompson*, 811 N.E.2d 888, 914 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*.

[10] The trial court's valuation of marital assets will be disturbed only for an abuse of discretion. *Morey v. Morey*, 49 N.E.3d 1065, 1069 (Ind. Ct. App. 2016) (citing *In re Marriage of Nickels*, 834 N.E.2d 1091, 1095 (Ind. Ct. App. 2005)). As long as the evidence is sufficient and reasonable inferences support the valuation, an abuse of discretion does not occur. *Id.* "Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court." *Id.* (citing *In re Marriage of Nickels*, 834 N.E.2d at 1095 (citation omitted)).

[11] Wife argues the trial court erred in valuing the farmland and in awarding the funds in the Edward Jones account.

A. *The Farmland*

[12] Wife asserts that the trial court erred in valuing the farmland which rendered the property division unequal. At the final hearing, Wife presented a Purdue Agricultural Economics Report dated August 2012 (the "Purdue Report"). Wife indicated that she used a value of $8,505 per acre, taken from the Purdue Report, that Husband has a one-third interest in 68.19 acres, and that she

multiplied 68.19 acres by $8,505 and divided by three to calculate the value of Husband's interest in the farmland to be $193,318.65.

[13] The Purdue Report provides information based on survey responses related to estimated farmland values and cash rents on State-wide and regional bases. The Purdue Report includes a table of average estimated farmland values per acre by geographical area and land class for selected time periods, and the table includes an average estimated value for farmland in the "North" area of Indiana in the "Poor" land class in June 2012 of $4,746 per acre, which is the lowest value for farmland in the North area as of that date shown in the table. Petitioner's Exhibit 2 at 3. The table also provides a State-wide average estimated value in June 2012 for "Transition" land, which is land moving out of production agriculture, of $8,505 per acre, which is the highest value for land in the State of Indiana as of that date shown in the table. *Id.* A footnote is included following the table's title which states: "The land values contained in this summary represent averages over several different locations and soil types. The value for a specific property can be determined by a professional appraiser." *Id.* at 3 n.1. Additionally, the Purdue Report later states:

> In both the case of farmland value and cash rent, the survey provides a general guide to value or rent but does not indicate a farmland value or cash rent for a specific farm. Arriving at a value or amount of cash rent for a specific farm requires additional research or assistance from a professional.

*Id.* at 4.

[14] On cross-examination, Wife indicated that she did not know the nutrient value or soil classification of the farmland, although she remembered that the contract between Husband and the farmer required the land to be kept up to grade. When asked if she knew the harvest that is yielded from the farmland, she replied that she used to know and that she was amazed how much came off of it. When asked how much she thought the farmland was worth, Wife answered at least twelve thousand dollars per acre.

[15] Husband presented the testimony of one of his sisters who testified that Husband and his two sisters inherited the farmland from their father, who passed away in December 1990. She also testified that, during the marriage of Husband and Wife, Husband's father gave Husband the former marital residence without a mortgage. When asked if she would sell the farmland for $135,000, Husband's sister testified that she would have to have it appraised and did not know "what property is going for." Transcript at 78. She also indicated that she had no plans to sell the farmland and that Husband would need the permission of the other two owners to sell the land.

[16] Husband presented the Cass County assessment of the farmland, which consisted of two parcels. The assessment indicated that Husband had a one-third interest in both parcels, that the parcels were classified as tillable land, and that as of March 1, 2012, the true tax value of one of the parcels was $103,600 and of the other parcel was $28,100, for a total of $131,700. Husband also indicated that he was seeking to maintain his one-third interest in the farmland. On cross-examination, Husband stated his belief that the value of his interest in

the farmland was $43,900. The following exchange occurred between Wife's counsel and Husband:

> Q. Would you be willing to sell it to [Wife] for $43,900 dollars?
>
> A. No.
>
> Q. OK. Would you be willing to let [Wife] take that interest for $43,900 dollars on her side of the column and then she can pay you out of the house?
>
> A. No.
>
> Q. That's because the h--, the value's substantially more than that, is it not, sir?
>
> A. Yes.
>
> Q. So this [is] an absolutely inaccurate value for the farm ground, correct, sir?
>
> A. No.
>
> Q. You just said it was.
>
> A. No, because I looked at it here, I can't go through it as quick as you're giving me questions to answer.
>
> Q. Would you sell your portion of that farm ground today for $43,900 to anybody that came along to buy it?
>
> A. No. We've got--, there's three people involved, my two sisters and myself.
>
> Q. OK. Let's say that some--, everybody agreed to sell it. Would you sell it for that amount?
>
> A. No.

*Id.* at 112-113.

[17]   Wife's proposed findings stated that the value of the one-third interest in the farmland was $193,318.65, and Husband's proposed findings stated that it was $43,900.

[18]   In the decree, the trial court entered the following findings:

> 29.  The Husband owns a one-third interest in approximately 68 acres of farmland located in Cass County, which he inherited from his father's estate in approximately 1992.
>
> 30.  The only competent and reliable evidence submitted to the court specific to the value of this farmland is from the Cass County Assessor, which assessed the entire parcel in 2012 as having a value of $131,700.00, one-third of which is $43,900.00.
>
> 31.  The court finds the Husband's interest in the farmland property to have a separation value of $43,900.00.
>
> 32.  The court further finds the Husband's interest in the farmland is awarded to him as his sole property, subject to the lien and obligations associated with it.

Appellant's Appendix at 16-17.  The court found that the former marital residence was acquired by the parties as a gift or inheritance from Husband's parents and had a value based upon the assessment of the Howard County Assessor of $98,300, and awarded the marital residence to Wife.  In denying Wife's motion to correct errors, the court stated that the Cass County assessment was the only documentary evidence as to the farmland's value that was specific to the property and that it acted within its discretion in valuing the farmland based on the assessment and not the Purdue Report.

[19]     On appeal, Wife argues that the court severely undervalued the farmland by disregarding the Purdue Report which contained expert analysis of farmland values throughout Indiana, that the property's assessed value is not equal to its fair market value, and that neither party believed the Cass County Assessor's valuation was accurate. Husband responds that Wife is simply requesting this court to reweigh the evidence and select her value, that the Cass County Assessor's valuation is based upon the actual property taking into account its physical nature and actual location, that the Purdue Report does not provide a value of the farmland on the date of filing and at best suggests an estimated range of value for agricultural land throughout Indiana based on a myriad of generalities, and that the Purdue Report specifically disclaims its application to establish value for a specific piece of farmland. In reply, Wife argues that the Purdue Report is a reliable source for valuing farmland and that, even giving the farmland a "poor" class rating, the farmland would be worth significantly more than the trial court's valuation.

[20]     Consistent with Ind. Code § 31-15-7-4(a),[1] the court included Husband's one-third interest in the sixty-eight acres of farmland in the marital property to be divided, and it was presented with differing values for the property at the date of separation, namely, a value based on the assessment of the Cass County Assessor and a value based on a calculation using the per acre values in a table

---

[1] This section provides in part that the court "shall divide the property of the parties, whether . . . acquired by either spouse in his . . . own right . . . ."

in the Purdue Report. We note that neither party presented an appraisal of the farmland. Further, the trial court was not required to rely upon the Purdue Report as a guide in determining the farmland's estimated value at the time of the parties' separation. The value claimed by Wife related to transition land, which is land moving out of production agriculture, and the evidence presented was that the farmland was tillable and did not suggest it was transition land. The table in the Purdue Report related to estimated land values in multi-county areas of Indiana, and the report emphasized that the estimated values represented averages, that the survey provided a general guide and did not indicate a value for specific farmland, and that the value for specific property could be determined by a professional appraiser. We also observe that Husband inherited his one-third interest in the farmland, that Husband and Wife acquired the former marital residence from Husband's parents without a mortgage, that the court valued the marital residence based upon the assessment of the Howard County Assessor, and that it awarded the farmland to Husband and the former marital residence with improvements to Wife.

[21] We will not substitute our judgment for that of the trial court and consider the evidence in the light most favorable to the judgment. *See Morey*, 49 N.E.3d at 1069. Based upon the evidence set forth above and in the record, and noting that the farmland and former marital residence were received from Husband's family and Wife received the former marital residence, we cannot conclude that the court abused its discretion in valuing Husband's partial interest in the

farmland for purposes of dividing the marital estate in a just and reasonable manner.

B. *The Edward Jones Account*

[22] Wife also argues that the trial court erred in awarding the funds in the Edward Jones account. She argues that the account was solely funded with the proceeds she received from pursuing an action for her daughter and that the evidence demonstrated that an unequal division in her favor was warranted. Husband argues he initially funded the account and that, even if Wife contributed to the account, it was commingled and both parties used the joint account throughout their marriage.

[23] The court found that the Edward Jones account "was funded during the marriage with money from the Husband's inheritance from his father's estate and with sums received by the Wife from a settlement for her claim arising from her daughter's death," that Wife "successfully pursued a claim for medical malpractice entitling her to a structured settlement entered into in 2003," and that "[a]s part of the settlement, the Wife received a lump sum cash payment of $400,000.00, which in part was used to fund the Edward Jones account and in part was consumed by the parties to their joint benefit during the marriage." Appellant's Appendix at 19.

[24] With respect to the division of the marital estate, the court did not find that either party had rebutted the presumption of an equal division of the marital

property under Ind. Code § 31-15-7-5. Specifically, the court found that "during their 29 year 10 month marriage, each party has contributed to the martial estate, in part by the Husband through gift and inheritance, and in part by the Wife through her structured settlement proceeds," that "after application of all relevant factors and findings, an equitable and fair distribution of the marital estate is to . . . award to the parties equally the net marital estate per Exhibit B attached and incorporated herein," and that "to effect an equal distribution of the marital estate, the proceeds of the Edward Jones account shall be distributed with the Husband to receive $60,529.60 and the Wife to receive $26,028.90." *Id.* at 21.

[25] The record reveals that Husband received the farmland and the former marital residence as a gift or inheritance and that Wife received a settlement in connection with a malpractice claim. When asked what funds in part were used to fund and open the Edward Jones account, Husband testified "[m]y father's inheritance," Transcript at 99, and Wife agreed that "[s]ome of the Edward Jones account was initially funded with money from [Husband]." *Id.* at 29. Wife also agreed that the funds in the Edward Jones account were commingled. Wife further testified that she spent money from the settlement, specifically "approximately [$]80,000," in remodeling the former marital residence, including building a new garage and adding custom cabinets, countertops, flooring, a well, and some furniture, and the court awarded the former marital residence to Wife. *Id.* at 18. When asked where the rest of the

money from the settlement went, Wife indicated it was spent on taking a lot of vacations, eating out, and purchasing gadgets that Husband wanted.

[26] The court's division of marital property is highly fact sensitive, and we review the court's discretion in dividing marital property considering the division as a whole and not item by item. *See Fobar*, 771 N.E.2d at 59. In dividing the money in the Edward Jones account, the court achieved an equal division of the marital estate, with a net distribution to Wife of $153,317.26 and to Husband of $153,317.27.[2] Based on the record, we cannot conclude that the trial court abused its discretion in distributing the funds in the Edward Jones account or in dividing the marital property.

## II.

[27] The next issue is whether the court abused its discretion in denying Wife's request for spousal maintenance. Wife argues that the court should have ordered spousal maintenance under Ind. Code § 31-15-7-2(1) because her ability to support herself has been materially affected as a result of her post traumatic stress disorder diagnosis and that she will face future medical expenses once she is no longer on Husband's insurance plan. Husband argues that there was no expert testimony that Wife is incapacitated or suffers any loss of earning ability, that Wife's description of her unclear thoughts and forgetfulness does not

---

[2] The court also ordered that Wife shall receive fifty percent of the coverture portion of Husband's pension.

establish an inability to support herself, and that the court was within its discretion not to award spousal maintenance.

[28] A court may order spousal maintenance under Ind. Code § 31-15-7-2 in three circumstances: incapacity maintenance, caregiver maintenance, and rehabilitative maintenance.[3] *Pala v. Loubser*, 943 N.E.2d 400, 404 (Ind. Ct. App. 2011) (citing *Cannon v. Cannon*, 758 N.E.2d 524, 525-526 (Ind. 2001)), *trans. denied*. Incapacity maintenance is governed by Ind. Code § 31-15-7-2(1), which provides:

> If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

[29] The trial court may make an award of spousal maintenance upon the finding that a spouse's self-supporting ability is materially impaired. *Bizik v. Bizik*, 753 N.E.2d 762, 768 (Ind. Ct. App. 2001), *trans. denied*. The trial court's power to make an award of maintenance is wholly within its discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances of the case. *Id.* at 768-769. However, even if a trial court finds that a spouse's incapacity materially affects her self-supportive ability, a

---

[3] In its conclusions, the court recited the sections of Ind. Code § 31-15-7-2 related to each of the three circumstances. Wife cites only subsection (1) of the statute on appeal and thus our discussion is limited to that subsection.

maintenance award is not mandatory. *Id.* at 769. Nevertheless, in determining whether a trial court has abused its discretion in a spousal maintenance determination, this court will presume that the trial court properly considered the applicable statutory factors in reaching its decision. *Id.* The presumption that the trial court correctly applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal. *Id.*

[30]     To award spousal maintenance under Ind. Code § 31-15-7-2(1), the trial court must first make a threshold determination that (1) a spouse is physically or mentally incapacitated and (2) the incapacity materially affects the spouse's self-supportive ability. *Id.* If the trial court finds that a spouse is incapacitated, it then has the discretion to award maintenance. *Id.*

[31]     The record reveals that Wife testified that she has post-traumatic stress disorder due to thirty years of beatings and mental abuse and is on medication for it, and that she sees a psychiatrist and a psychologist. When asked how much her medications would cost without insurance, Wife testified "If I, I can go generic on three of them and I think that's around a hundred, and then two of them I cannot go generic on and one alone is 400, and the other one I think is around 2." Transcript at 21. When asked "[d]oes it incapacitate you in any way," Wife responded:

> Yeah. Yeah, when I'm--, my thoughts are not totally clear at
> work. I cannot, when I'm writing I'm [sic] often forget what it is
> I'm writing or what I want to say and I can be out in public and I

can see somebody who is in an abusive relationship and I have to, I have to leave, I have to get away because it's, I want to flip out or I want to just break (inaudible). I just have to get away.

*Id.* at 24. Wife also indicated she would be eligible for Medicare in March of 2016.

[32] With respect to Wife's income, the court found that she is employed part-time with average earnings of $1,250 per month and receives social security benefits of $628 per month. The court found that, as part of the malpractice claim settlement, Wife receives two monthly annuities which began in August 2003 and will continue until August of 2018 in the respective amounts of $1,784 and $278 per month. The court further found that Husband has a vested pension through his former employer for which he receives $1,255.66 per month and that Wife has a surviving spouse benefit, and the court awarded fifty percent of the coverture portion of Husband's pension to Wife. The court also found that Husband's "net monthly income consists of a pension benefit . . . and social security benefits totaling approximately $2,400 per month" and that he also receives rent from the farmland which in 2011 was in the net amount of $4,489. Appellant's Appendix at 15. The court further found in its decree of dissolution on December 7, 2015, that Wife suffers from post-traumatic stress disorder and participates in treatment which includes therapy and medication, that upon the dissolution being final, Wife will no longer be a covered dependent on Husband's health insurance, and that Wife will be responsible for her own health care costs estimated to be between $400 and $800 per month until she qualifies for Medicare in March 2016.

The trial court concluded that "Wife is employed part-time and receives income in addition to her wages," that "[t]here has been no showing she meets the necessary criteria to which the Husband should pay or provide her maintenance under Indiana law," and that "[a]s such, her request for spousal maintenance must be and is denied." *Id.* at 25. The court also distributed the marital property to the parties equally. A maintenance award is not mandatory, and we presume the court properly considered the applicable statutory factors in reaching its decision. *Bizik*, 753 N.E.2d at 769. Based upon the record, we cannot conclude the trial court abused its discretion in denying Wife's request that Husband be ordered to pay spousal maintenance under Ind. Code § 31-15-7-2(1).

## *Conclusion*

For the foregoing reasons, we affirm the trial court's division of the marital estate and denial of Wife's request for spousal maintenance.

Affirmed.

Mathias, J., concurs.

Robb, J., concurs in result without opinion.