## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 04 2018, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul J. Watts
Watts Law Office
Spencer, Indiana

ATTORNEYS FOR APPELLEE

John R. McKay
Daniel Cyr
Hickam & Lorenz, P.C.
Spencer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark A. Rittenhouse, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Rosetta D. Rittenhouse, <br> *Appellee-Defendant* | April 4, 2018 <br><br> Court of Appeals Case No. <br> 60A04-1708-DR-1840 <br><br> Appeal from the Owen Circuit Court <br><br> The Honorable Kelsey B. Hanlon, Judge <br><br> Trial Court Cause No. <br> 60C02-1512-DR-149 |

**May, Judge.**

[1] Mark A. Rittenhouse appeals the division of marital assets ordered pursuant to the dissolution of his marriage to Rosetta D. Rittenhouse. He asserts the court abused its discretion by awarding Rosetta thirty percent of the marital estate. We affirm.

# Facts and Procedural History

[2] In January of 1994, Mark purchased a house. At that time, he and Rosetta were already dating, and she moved into the house with him. In 1999 or 2000, Rosetta moved out for approximately three months and then returned to Mark's house, where she lived until "two thousand eleven or twelve," (Tr. at 7), when she moved out for "the best part of two years." (*Id*. at 8.) Mark and Rosetta began dating again in 2013, married on September 17, 2013, and separated on December 5, 2015. Mark filed a petition for dissolution of their marriage on December 29, 2015.

[3] On July 17, 2017, the trial court entered an final order that included the following pertinent findings of fact:

> 2.    The Petitioner, Mark A. Rittenhouse, is 62 years of age and is currently self-employed as a contractor. Last year [Mark] earned approximately $56,862.00.

> 3.    He has had arthritis for several years, currently has lost the use of one hand and anticipates neck surgery in the immediate future, causing a decrease in income.

4.     The Respondent, Rosetta D. Rittenhouse, is 70 years of age and has held different jobs both before and during the pendency of this action.  [Rosetta] receives SSI benefits of $770.00 per month with medicare plus income from cleaning houses, averaging $75.00 per house.  In recent years [Rosetta] has cleaned between 1 and 3 houses per week.

5.     [Rosetta] has heart problems that have impacted her employment options.

6.     On or about January 1, 1994, [Mark] purchased the residence . . . for $100,000.00.  The remaining balance on the mortgage is approximately $34,011.00.  The home's present value is $150,000.00[.]

7.     The Parties maintained a relationship for approximately 20 years, residing together in the residence for most of that time with the exception of two periods, the first of approximately 1 year and the second of approximately 2 years just prior to the marriage.  During their cohabitation, they maintained separate accounts and did not comingle their debts or property other than the various items of personal property maintained in the home.

8.     [Rosetta] did not make financial contributions to the acquisition, improvements or costs of maintenance of the marital residence prior to or during their marriage.  [Rosetta] paid some utilities and regularly bought groceries but, otherwise, retained her income for her own benefit and did not make significant contributions to the household expenses.

9.     [Rosetta] made non-monetary contributions to the household as a homemaker during the marriage.

10. During the time the parties resided together prior to the marriage, [Mark] assisted [Rosetta] with payments on her delinquent credit card accounts and bills.

11. [Rosetta] had issues with overspending. [Rosetta] opened a Sears Mastercard account in [Mark]'s name without [Mark]'s knowledge or permission. [Mark] subsequently settled the balance of $4,553.11 by paying $2,276.56.

12. Pursuant to this Court's provisional order, [Rosetta] removed approximately $4,895.00 of personal property and home décor from the residence. The Court adopts the values contained in [Mark]'s Exhibit 1, excluding the $5,000.00 value placed on the *MISCELLANEOUS* items contained in [Mark]'s Ex. 1. The Court finds those items to be worth $2,500.00.

13. [Mark] has pensions to which he has made no contributions for many years. [Rosetta] did not contribute to the acquisition of either pension.

14. The debts of the parties total $61,487.50. The Court is not considering the loan against [Mark]'s IRA as marital debt, as he took that loan out after the filing of his Petition.

(Appellant's App. Vol. 2 at 8-9) (emphasis in original). After a number of statements regarding the law controlling the court's decision, the court then entered the following conclusions:

4. Although the Parties cohabited for a substantial time period prior to the marriage, [Mark] established his business and purchased his home, vehicles and pension prior to the marriage and without significant contribution from [Rosetta] during any

period of cohabitation. The Parties did not commingle their property and debts before or during the marriage.

5. [Mark]'s pension accounts should be a set-off in this favor and not included in the Court's calculation of the distribution of the marital estate.

6. Both Parties appear to have diminishing earning capacities due to health concerns. [Mark] has a superior earning capability to [Rosetta].

7. [Mark] has rebutted the presumption that an equal division of the marital estate would be just and reasonable.

8. Considering the factors enumerated in I.C. 31-15-7-5, including the contribution of the parties to acquisition of the property, the extent to which the property was acquired before the marriage, the health and earning abilities of the parties and the dissipation of assets, the Court concludes that a just and reasonable distribution of marital assets would be as follows: a 70% distribution to [Mark] and a 30% distribution to [Rosetta] (percentage calculated after setting off [Mark]'s pension accounts). The net value of the marital estate after the pension account's set-off is $135,357.50 (*see attached balance sheet*).

9. Said distribution of assets and debts should be made as follows:

   a. [Rosetta] shall be awarded all the personal property as contained in the proposed division in [Mark]'s Exhibit 1, the same having a total value of $4,895.00 (*see paragraph 11 in Findings*).

b.   [Mark] shall be awarded all the personal property as contained in the proposed division outlined in [Mark]'s Exhibit 1, plus the tractor, which was not included, the same having a total value of $4,050.00.

c.   [Mark] shall be awarded the marital residence and shall be sole[ly] responsible for the associated mortgage and all other costs associated with the same. The marital residence is valued at $150,000.00 and was encumbered at the time of final separation in the amount of $34,011.00.

d.   [Mark] shall be awarded as his sole and separate property his retirement accounts. These shall be set-off from the marital estate for calculation purposes.

e.   [Rosetta] shall be awarded the 2007 VW Convertible worth approximately $7,700.00. [Mark] shall pay the balance on the vehicle note within 60 days of this Order and execute any necessary documentation to effectuated [sic] the transfer [of] full ownership of the vehicle to [Rosetta]. [Rosetta] shall also be awarded the Ford Explorer Sport Track worth approximately $2,500.00.

f.   [Mark] shall be awarded the 2013 Chevy Truck worth approximately $14,000.00 and shall be responsible for the associated lien in the amount of $14,000.00. [Mark] shall also be awarded the 1999 Ford Expedition worth approximately $2,500.00.

g.   [Mark] shall be responsible for the Sears Mastercard Debt in the amount of $2,276.50, the Care Credit

Card in the amount of $3,200.00, and the Visa Card in the amount of $1,000.00.

h.    [Mark] shall have as his sole and separate property the intangible property including the bank account (#[ . . . ]) containing $1,200.00 and the Business account containing $10,000.00.

i.    [Mark] shall pay to [Rosetta] a cash payment of $25,512.25 within 90 days of this Order.

(*Id*. at 10-12) (emphases in original).

# Discussion and Decision

[4]    Mark asserts the court's division of the marital estate was an abuse of discretion because the court misapplied the law. Where, as here, a party requested findings and conclusions pursuant to Trial Rule 52, we cannot set aside the findings or judgment unless clearly erroneous. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). Our review is two-tiered: first, we decide "whether the evidence supports the findings, and second, whether the findings support the judgment." *Id*. We affirm the trial court's findings unless no facts or inferences from the record support them, but we review legal conclusions *de novo*. *Id.*

[5]    Indiana subscribes to a "one-pot" theory of marital property. *Morey v. Morey*, 49 N.E.3d 1065, 1069 (Ind. Ct. App. 2016) (citing Ind. Code § 31-15-7-4). Thus, when parties petition for dissolution of marriage,

the court shall divide the property of the parties, whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

    (A) after the marriage; and

    (B) before final separation of the parties; or

(3) acquired by their joint efforts.

Ind. Code § 31-15-7-4(a); *see also* Ind. Code § 31-9-2-98 (defining "property" for the purposes of dissolution as "all the assets of either party or both parties"). Even if the court later determines that it will set a particular asset aside to one of the parties, it must first include such asset in the marital estate and assign it a value. *Quinn*, 62 N.E.3d at 1223. This "one-pot" theory ensures that all assets are subject to the trial court's power to divide and award. *Morey*, 49 N.E.3d at 1069.

[6]    Then, when the court divides the property, it

> shall presume that an equal division of the marital property between the parties is just and reasonable. However this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

      (A) before the marriage; or

      (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

      (A) a final division of property; and

      (B) a final determination of the property rights of the parties.

Ind. Code § 31-15-7-5. If the court determines that one party rebutted the presumption of equal division, "then the court must state its reasoning in its findings and judgment." *Morey*, 49 N.E.3d at 1072.

The trial court has discretion to divide marital property, and we reverse only if the court abused its broad discretion. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). An abuse of discretion occurs if the trial court: (1) entered a ruling clearly against the logic and effect of the facts and circumstances before the court, (2) misinterpreted the law, or (3) disregarded evidence of factors listed in the controlling statute. *Id.* When we review a claim that the trial court improperly divided marital property, we consider only the evidence most favorable to the trial court's disposition. *Morey*, 49 N.E.3d at 1069. Even if the facts and reasonable inferences might allow for a different conclusion, "we will not substitute our judgment for that of the trial court." *Id.*

Division of marital property is highly fact sensitive, and we review a trial court's division "as a whole, not item by item." *Love*, 10 N.E.3d at 1012. We will not weigh evidence or consider evidence that conflicts with the trial court's judgment. *Id.* The party challenging the division of marital property "must overcome a strong presumption that the court considered and complied with the applicable statute." *Id.* at 1012-13 (quoting *Wanner v. Hutchcroft*, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008)). In essence, we may not reverse a property distribution unless there is no rational basis for it. *Id.* at 1013.

The trial court concluded Mark's pension plans should be excluded from the marital estate and Mark had rebutted the presumption of equal division of the remaining marital assets. The court also concluded:

> 4. Although the Parties cohabited for a substantial time
> period prior to the marriage, [Mark] established his business and

purchased his home, vehicles and pension prior to the marriage and without significant contribution from [Rosetta] during any period of cohabitation. The Parties did not commingle their property and debts before or during the marriage.

* * * * *

8. Considering the factors enumerated in I.C. 31-15-7-5, including the contribution of the parties to acquisition of the property, the extent to which the property was acquired before the marriage, the health and earning abilities of the parties and the dissipation of assets, the Court concludes that a just and reasonable distribution of marital assets would be as follows: a 70% distribution to [Mark] and a 30% distribution to [Rosetta] (percentage calculated after setting off [Mark]'s pension accounts). The net value of the marital estate after the pension account's set-off is $135,357.50 (*see attached balance sheet*).

(Appellant's App. Vol. 2 at 10-11) (emphasis in original).

Mark asserts the trial court erred by giving Rosetta thirty percent of the marital assets remaining after his pensions were set aside to him: "Rose admittedly contributed nothing to the acquisition or costs of maintenance of the property and . . . [w]hile she paid some utilities and bought groceries, Rose's 'non-monetary contributions to the household' as a homemaker were as much for her and her children's benefit as for Mark." (Appellant's Reply Br. at 5.)

We decline Mark's invitation to alter the percentage of marital assets to which a homemaker is entitled based on the bread-winning spouse's post-hoc assessment of whether the homemaker's presence in the home brought adequate benefit to the bread-winner. The court identified and valued the

assets, determined the pensions Mark earned prior to cohabiting with Rosetta should be set aside to him, evaluated the statutory factors that control whether the presumption of equal division has been rebutted, determined justice required Mark receive seventy percent of the marital assets, and explained its decision in the final order. Mark has not demonstrated the court erred as a matter of law. *Cf.*, *e.g.*, *Quinn*, 62 N.E.3d at 1224 (reversing and remanding for recalculation of property disposition because court failed to include all property in the marital pot).

[12] Mark also claims that affirming the trial court's decision "effectively discourage[s] cohabiting couples in those circumstances from marrying." (Appellant's Br. at 8.) The "circumstances" to which Mark refers are the facts that the parties had cohabited for nearly twenty years prior to their 2013 marriage, that during cohabitation the parties had intentionally kept their finances separate because of Rosetta's compulsive spending, and that Mark had only married her when he thought the spending "problem was resolved." (*Id.* at 7.) He asks us to "balance that public policy [of acknowledging the contributions made during lengthy cohabitation if the parties later marry] with the equally important policy in favor of encouraging marriage." (*Id.* at 6.)

We are not unsympathetic to the frustration Mark undoubtedly feels about the decision he made in 2013 and the impact it has had on his finances. We cannot, however, ignore the policy decisions made by our Legislature. Indiana's legislature adopted the "one-pot" theory of marital property, which defines all the assets produced before or during the marriage, by one or both of

the parties, as marital property. Ind. Code § 31-15-7-4(a). It also created a presumption that all the marital assets should be divided equally between the parties. Ind. Code § 31-15-7-5. To the extent Mark is asking us to ignore the presumption that a wife is entitled to half of the assets owned by a married couple, his arguments are better addressed to the legislature.

# Conclusion

[13] Mark has not demonstrated the trial court abused its discretion when it assigned to Rosetta thirty percent of the marital assets remaining after Mark's pensions were set aside to him. Accordingly, we affirm.

[14] Affirmed.

Vaidik, C.J., and Altice, J., concur.